ERIC GRANT
Deputy Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

JUDITH RABINOWITZ
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice
999 18th Street
South Terrace - Suite 370
Denver, CO 80202
Telephone: (303) 844-1349

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NO CASINO IN PLYMOUTH, DUEWARD W. CRANFORD II, DR. ELIDA A. MALICK, JON COLBURN, DAVID LOGAN, WILLIAM BRAUN AND CATHERINE COULTER,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL INDIAN GAMING COMMISSION, et al.,<br><br>Defendants. | CASE NO. 2:18-cv-01398-TLN-CKD<br><br>**UNITED STATES' REVISED REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>DATE: September 17, 2020<br>TIME: 2:00 p.m.<br>COURTROOM: No. 2, 15th Floor<br>JUDGE: Honorable Troy L. Nunley |

The United States hereby submits this revised, page limit complaint Reply to ECF No. 44 (Plaintiffs' Memorandum in Opposition to Defendants' Motion for Judgment on the Pleadings ("Opp. Mem.").[1]

---

[1] Contrary to Plaintiffs' assertion (Opp. Mem. 2) the Notice of Electronic Filing for ECF No. 41 demonstrates the Department's inclusion as a represented defendant.

**INTRODUCTION**

Plaintiffs' Opposition ignores the Ninth Circuit's findings necessary to its affirmance of Interior's 2012 fee-to-trust Record of Decision ("ROD") for the Ione Band of Miwok Indians ("Tribe" or "Band"). The Ninth Circuit has already determined that the Ione Band is a federally recognized tribe eligible for the benefits of the Indian Reorganization Act (IRA), 25 U.S.C. § 5101 et seq., and the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701 *et seq. See County of Amador v. United States Dep't of Interior*, 872 F.3d 1012, 1028, 1031 (9th Cir. 2017), *cert. denied* 139 S. Ct. 64 (2018) ("[T]he Band is a recognized Indian tribe that was 'under Federal jurisdiction' in 1934, and . . . is eligible to have land taken into trust on its behalf under 25 U.S.C. § 5108." . . . "We therefore hold that Interior did not err in allowing the Band to conduct gaming operations on the Plymouth Parcels under the "restored tribe" exception of IGRA."). Plaintiffs' effort to deprive the Tribe of these confirmed rights must be rejected.

Contrary to Plaintiffs' contention (Opp. Mem. at 2), Defendants' Motion for Judgment on the Pleadings is based on the pleadings in *this* case and not those in the *Amador County* litigation. Moreover, it makes no difference that Plaintiffs were not party to the *Amador County* litigation, the Ninth Circuit's legal findings in the litigation are binding on the district courts of this Circuit. *See Mohamed v. Uber Techs., Inc.* 848 F.3d 1201, 1211 (9th Cir. 2016). Plaintiffs likewise cannot ignore circuit court precedent. Yet their Complaint—essentially a compilation of legal conclusions contrary to Ninth Circuit and other precedent—does just that. Their Opposition's "Statement of the Case" (Opp. Mem. 4-6) only reinforces this point.[2] It lays bare Plaintiffs' continued disregard for the Ninth Circuit's findings that the Tribe is federally recognized and eligible to have land acquired in trust under the IRA, that the Plymouth Parcels would qualify for gaming under IGRA once in trust, and that former Acting Assistant Secretary–Indian Affairs Donald Laverdure had the requisite authority to approve trust acquisition of the Plymouth Parcels for the Tribe. Thus, this Court need look no further than *Amador County* to grant Defendants' Motion.

---

[2] While Plaintiffs reference the equal protection and federalism claims in their Complaint, the claims are not briefed or defended in their Opposition and hence are waived. *See, e.g., Gomez v. J. Jacobo Farm Labor Contractor, Inc.*, 334 F.R.D. 234, 265 (E.D. Cal. 2019), modified on reconsideration, No. 115CV01489AWIBAM, 2020 WL 1911544 (E.D. Cal. Apr. 20, 2020) ("The Court views this omission as a waiver or concession of the argument.").

*Defs' Revised Reply in Supp. of Mot. for Judgment on the Pleadings*

1

**ARGUMENT**

**I.     Plaintiffs Cannot Overcome Ninth Circuit Precedent Fatal to Their Claims**

    **A.     Plaintiffs' challenge to the NIGC's 2018 approval of the Tribe's Gaming Ordinance is predicated on issues already decided by the Ninth Circuit in *Amador County* and otherwise fails to state a claim**

Plaintiffs assert (Opp. Mem. 9) that because the instant suit involves the National Indian Gaming Commission ("NIGC") and its 2018 approval of the Tribe's Gaming Ordinance, this suit is not governed by *Amador County*, which did not involve the NIGC or the Gaming Ordinance. The flaw in this logic is that Plaintiffs' claims against the NIGC depend on their contention (Opp. Mem. 9) that the Tribe is not federally recognized, a matter indisputably governed by *Amador County*. Their claims against the NIGC also ignore the Ninth Circuit's finding that the Plymouth Parcels would be IGRA eligible "Indian lands" once in trust, which they now are.[3]

Plaintiffs' further contention (Opp. Mem. 9) that NIGC lacked authority to approve the non-site-specific Gaming Ordinance is contrary to other Ninth Circuit precedent. *See North County Cmty. All. Inc. v. Salazar*, 573 F.3d 738, 746-47 (9th Cir. 2009) ("*North County*"). Plaintiffs contend that the NIGC's "jurisdiction" to approve tribal gaming ordinances requires that a tribe have extant Indian lands. IGRA, however, has no such requirement and Plaintiffs conveniently ignore the fact that the NIGC routinely approves non-site-specific anticipatory gaming ordinances for tribes that have not yet determined where to pursue gaming, or do not yet have trust lands that may meet one of IGRA's exceptions.[4] *See North County,* 573 F.3d at 746 (IGRA does not require tribes to identify particular gaming sites as a condition of NIGC approval of gaming ordinances and it would be "absurd[ly] impractical" to require otherwise). Indisputably, "most gaming ordinances" NIGC approves "do not identify specific sites." *Id.*

---

[3] Plaintiffs disingenuously disregard both this Court's and the Ninth Circuit's findings that the Plymouth Parcels would be IGRA eligible "Indian lands" once in trust. And, as Plaintiffs are well aware, the Plymouth Parcels are now in trust. But consistent with its pattern of contesting agency actions in order to challenge the Tribe's federally recognized sovereign status, and now the status of its trust lands, NCIP has filed a new suit challenging the conveyance of the Plymouth Parcels into trust. In so doing NCIP reprises many of the same specious claims mounted in this suit. *See No Casino in Plymouth v. Ryan Hunter* et al., Civ. No. 2:20-cv-01358-MCE-KJN (E.D. Cal., filed July 6, 2020).

[4] Interior's ROD reflects the determination that the Plymouth Parcels, once in trust, would qualify for the "restored lands for a restored tribe" exception under IGRA. *Amador County*, 872 F.3d at 1018-19.

*Defs' Revised Reply in Supp. of Mot. for Judgment on the Pleadings*

2

Additionally, the so-called "jurisdictional axiom" Plaintiffs ascribe to *Michigan v. Bay Mills Indian Community*, 134 S. Ct. 2024 (2014), with no pin cite, is inapposite. In *Bay Mills*, the Supreme Court held that IGRA's abrogation of a tribe's sovereign immunity only permits a state's suit to enjoin a tribe's gaming activities within Indian lands. *Id.* at 2032. Here, Plaintiffs challenge the NIGC's administrative action to approve the Tribe's gaming ordinance and not gaming activities of the Tribe. And, even if Plaintiffs had challenged the Tribe's gaming activities, as the Supreme Court explained, gaming activity is "what goes on in a casino-each roll of the die and spin of the wheel" and does not include a tribe's administrative actions – the "off-site licensing or operation of the games." *Id.* IGRA provides clear criteria for the NIGC Chair's approval of a gaming ordinance and, contrary to Plaintiffs' contentions, (Opp. Mem. 9) those criteria do not include a requirement that the tribe have or specify the location of any Indian lands. 25 U.S.C. § 2710(b)(2). The NIGC's approval of the Tribe's Gaming Ordinance was entirely consistent with governing law and regulations.

### B. In *Amador County*, the Ninth Circuit specifically confirmed that Acting Assistant Secretary–Indian Affairs Donald Laverdure had the authority to issue the ROD

Plaintiffs try to avoid the Ninth Circuit's finding that Acting Assistant Secretary–Indian Affairs Donald Laverdure was fully authorized to approve the 2012 ROD by characterizing (Opp. Mem. 10-11) the finding as dictum. It is not. Instead, as part of its searching review the Ninth Circuit satisfyied itself that the Interior official who approved and signed the 2012 ROD had the authority to do so. *See Amador County*, 872 F.3d at 1019 n.5. The Ninth Circuit's examination of Laverdure's authority, set forth in a full paragraph complete with supportive case citations, cannot fairly be characterized (Opp. Mem. 11) as a mere "rhetorical flourish" as Plaintiffs claim.

The Ninth Circuit's affirmance of Laverdure's authority makes clear that Plaintiffs' reliance (Opp. Mem. 10) on the Appointments Clause of the Constitution, U.S. Const. Art. II, § 2, cl. 2, for the proposition that only the Secretary, as a "principal officer" selected by the President with the advice and consent of the Senate, can make a decision to acquire land into trust under the IRA, is unavailing. Plaintiffs conflate the Appointments Clause with the delegation authority of such officers.

*Defs' Revised Reply in Supp. of Mot. for Judgment on the Pleadings*

3

The Secretary has properly delegated the authority to decide whether to acquire land into trust to the Assistant Secretary–Indian Affairs pursuant to Congress's provision of broad authority to delegate Secretarial authority to other Interior officials. The congressionally enacted Reorganization Plan No. 3 of 1950 transferred all functions of the Interior Department to the Secretary of the Interior and provided that the Secretary "may from time to time make such provisions as he shall deem appropriate authorizing the performance by any other officer, of the Department of the Interior of any function of the Secretary." *See* 5 U.S.C. App. 1, Reorganization Plan No. 3 of 1950, Secs. 1& 2 (originally enacted as 15 F.R. 3174, 64 Stat. 1262, as amended June 1, 1971, Pub. L. 92-22, Sec. 3, 85 Stat. 75). In keeping with Congress's broad grant of authority to the Secretary to delegate his or her responsibilities (including land into trust decision making), the Secretary has, in turn, formally delegated that authority to the Assistant Secretary–Indian Affairs, as set forth in the Interior Department Manual.[5]

The Federal Vacancies Reform Act of 1998 (FVRA), 5 U.S.C. § 3345, provides that the vacancy of an office subject to presidential appointment and Senate confirmation shall be temporarily filled by the first assistant to such office. Laverdure, as Principal Deputy Assistant Secretary–Indian Affairs, satisfied that requirement and was properly designated the "acting" Assistant Secretary when the holder of that office resigned. Plaintiffs' reliance (Opp. Mem. 12) on *Crawford-Hall v. United States*, 394 F. Supp. 3d 1122 (C.D. Cal. 2019), to make a contrary argument is misplaced. There, unlike here, the question for the court was whether the "first assistant" to the Assistant Secretary could issue a final decision on an administrative appeal pursuant to 25 C.F.R. Part 2, after the 210-day acting period set forth in the FVRA, 5 U.S.C. § 3346, had expired and the Assistant Secretary position remained vacant. *Crawford-Hall*, 394 F. Supp. 3d at 1136. In this case, there is no dispute that Laverdure issued the ROD during the 210-day acting period, in which he was automatically vested with the authority to carry out all the functions of the Assistant Secretary, including "taking land into trust under the IRA, a duty that had been delegated to the

---

[5] *See* 109 DM 1.4 (general delegation); 200 DM 1 (general authority and procedures for and scope of delegation). This includes delegation of broad authorities over Indian matters to the Assistant Secretary–Indian Affairs, including "all of the authority of the Secretary" pertinent thereto. *See* 209 DM 8 (delegations to the Assistant Secretary–Indian Affairs); 109 DM 8 (general responsibilities of the Assistant Secretary – Indian Affairs). Thus the delegation includes the authority to take land into trust. (Department Manual sections available at https://www.doi.gov/elips/browse).

*Defs' Revised Reply in Supp. of Mot. for Judgment on the Pleadings*

Assistant Secretary." *Amador County*, 872 F.3d at 1019 n.5. *See also, Stand Up! for Cal. v. U.S. Dep't of Interior*, 298 F. Supp. 3d 136, 141-49 (D.D.C. 2018) (holding that first assistant had authority to issue a decision to acquire land in trust even *after* the expiration of the 210-day acting period). Thus, *Crawford-Hall* had no bearing on Laverdure's authority to issue the ROD and the Ninth Circuit's finding to the contrary controls. Plaintiffs' assertion (Opp. Mem. 12) that the Secretary alone has the exclusive authority to determine to take land into trust is nothing more than an erroneous legal conclusion that need not be accepted as true.

Plaintiffs' additional contention (Opp. Mem. 10) that Laverdure allegedly "failed to follow the majority opinion in *Carcieri v. Salazar*, 555 U.S. 379 (2009)" is patently wrong. As the Ninth Circuit found, the *Carcieri* majority did not address whether a tribe had to be "recognized" in addition to "under federal jurisdiction" in 1934 to have land acquired in trust pursuant to the IRA. *Amador County*, 872 F.3d at 1020. *See, also Mackinac v. Jewell*, 829 F.3d 754, (D.C. Cir. 2016) ("The Supreme Court has interpreted the phrase "now under Federal jurisdiction" to refer only to tribes that were under federal jurisdiction in 1934 … The Court has not analyzed the meaning of the word "recognized" nor has it determined whether recognition must have existed in 1934.")[6]

Finally, Plaintiffs' contention (Opp. Mem. 11) that Laverdure "relied on a 2006 Associate Solicitor opinion" allegedly withdrawn by then-Solicitor Bernhardt, also ignores the *Amador County* precedent. *See Amador County*, 872 F.3d at 1019 n.4 (noting Interior's explication in the briefing in that case that "in 2011, Solicitor Hilary Tompkins reaffirmed the 2006 Determination [ ] after concluding that neither Bernhardt's circulation of his draft legal opinion nor his issuance of it to the Acting Deputy Assistant Secretary had the effect of withdrawing or reversing it.") As confirmed by the Ninth Circuit, Acting Assistant Secretary Laverdure possessed the requisite authority to approve the ROD and properly followed the dictates of *Carcieri*.

---

[6] Plaintiffs' reliance (Opp. Mem. 10) on their Notice of Additional Authority and Request for Judicial Notice of Sol. Op. M-37055, ECF No. 40, again ignores the March 10, 2020 guidance accompanying the Opinion, "Procedure for Determining Eligibility for Land-into-Trust under the First Definition of "Indian" in Section 19 of the Indian Reorganization Act," which guidance makes clear that the Opinion is intended to apply prospectively only. *See* https://www.bia.gov/bia/ots/fee-to-trust.

*Defs' Revised Reply in Supp. of Mot. for Judgment on the Pleadings*

### C. The Ninth Circuit's confirmation of the Tribe's federally recognized status disposes of Plaintiffs' untimely and erroneous claim that the Tribe's only avenue to recognition was through the 25 CFR Part 83 process

Plaintiffs' contention (Opp. Mem. 12-14) that, absent acknowledgement under the Part 83 procedures, the Tribe is not entitled to the benefits of the IRA or IGRA, is a time-barred[7] erroneous legal conclusion that need not be accepted as true. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The contention also fails to state a claim for which relief can be granted. Again, the Ninth Circuit has already considered and accepted Interior's 1994 reaffirmation of the Tribe's prior, pre-Part 83, recognized status as within Interior's authority and in keeping with other such administrative corrections.[8] Thus, Plaintiffs are wrong in their contention (Opp. Mem. 19) that the Ninth Circuit did not "decide the federal recognition and Part 83 issues" and also wrong in their characterization (Opp. Mem. 20) as "non-binding dictum" the Ninth Circuit's determination that the Tribe is federally recognized. Instead, the Ninth Circuit's analysis specifically underscored that the reaffirmation of the Tribe's prior, pre-Part 83, recognition occurred before enactment of the Federally Recognized Indian Tribe List Act of 1994 ("List Act"), 25 U.S.C. §§ 5130-31, 5131(a), and thus prior to Act's accompanying findings regarding methods of recognition, 108 Stat. 4791, relied upon (Opp. Mem. 17) by Plaintiffs. *Amador County*, 872 F. 3d at 1030 n.17. The Ninth Circuit also noted the Band's inclusion on Interior's 1995 Federal Register List of federally recognized tribes, 60 Fed. Reg. 9250-01, 9252 (Feb. 16, 1995), which list Congress had mandated through the List Act. *See* 108 Stat. 4791 finding (8), ("the list of federally recognized tribes

---

[7] The Tribe has been included on the official *Federal Register* list of federally recognized tribes since 1995. 60 Fed. Reg. 9250-01, 9252 (Feb. 16, 1995). Thus, the running of the applicable six year statute of limitations, 28 U.S.C. 2401(a), on Plaintiffs' challenge to the Tribe's status, Compl. ¶ 98, is "apparent on the face of the complaint" and may be dismissed on that basis. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006). *See also, Camp v. U.S. BLM*, 183 F.3d 1141, 1145 (9th Cir.1999) ("[P]ublication in the Federal Register is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance").

[8] *See, e.g.* 67 Fed. Reg. 46328 (July 12, 2002) (explaining that "[t]he Assistant Secretary–Indian Affairs reaffirmed the formal recognition of the King Salmon Tribe, the Shoonaq' Tribe of Kodiak and the Lower Lake Rancheria, on December 29, 2000" and that "[t]he reaffirmation acknowledged that an administrative oversight had occurred"); 80 Fed. Reg. 37538-01, 37539 (July 1, 2015) (explaining that prior to 2015 and the announced new policy, "even after the promulgation of the Part 83 regulations in 1978 …. [t]he Department has 'reaffirmed' some tribes and reorganized some half-blood communities as tribes under the Indian Reorganization Act (IRA)."

*Defs' Revised Reply in Supp. of Mot. for Judgment on the Pleadings*

which the Secretary publishes *should reflect all of the federally recognized Indian tribes in the United States* which are eligible for the special programs and services provided by the United States to Indians because of their status as Indians.") (Emphasis added). Plaintiffs conspicuously ignore that the Ninth Circuit further noted, *Amador County*, 872 F.3d at 1028-29, Interior's acceptance of the Tribe's governmental election in 1996 as anticipated in the final stages of the *Ione Band of Miwok Indians v. Burris*, (E.D. Cal. No. Civ-S-90-0993, closed Sept. 4, 1996) litigation ("*Burris* litigation").

The Solicitor of the Interior Department recently addressed reaffirmations of prior recognized status in the March 10, 2020 guidance memorandum to Regional Solicitors "*Procedure for Determining Eligibility for Land-into-Trust under the First Definition of "Indian" in Section 19 of the Indian Reorganization Act*". ("Solicitor's Guidance") (available at https://www.bia.gov/bia/ots/fee-to-trust). As the Solicitor's Guidance makes clear, "[p]rior to 2015, the Department on occasion reaffirmed the federally acknowledged status of tribes through administrative means other than Part 83," including "through corrections to the Department's list of Indian entities recognized and eligible to receive services from the Bureau of Indian Affairs." Solicitor's Guidance at 10. The Solicitor specifically references the March 22, 1994 reaffirmation of the Ione Band's prior, pre-Part 83, federally recognized status as one such example, *id*. at 10 n.47, and goes on to cite 67 Fed. Reg. 46328 (Jul. 12, 2002), *supra* at n.10, as reaffirming federal recognition of yet more tribes "omitted from the federal list by administrative oversight." The Solicitor clarifies that, as of 2015, requests for federal acknowledgment (recognition) by reaffirmation or other bases are to be made under Part 83, *citing* 80 Fed. Reg. 37538 (Jul. 1, 2015).[9]

Plaintiffs' contention that the benefits of the IRA and IGRA are limited to tribes acknowledged through the Part 83 regulatory process finds no support in the law or facts. *See, e.g.*, 25 U.S.C. § 5131(a) (the Secretary shall publish in the Federal Register a list "of *all* Indian tribes which the Secretary recognizes to be eligible for the special programs and services provided by the United States to Indians

---

[9] The Ninth Circuit concluded in affirming Interior's determination that the Tribe qualified as a "restored" tribe under IGRA section 2719(b)(1)(B)(iii), that "Congress used that undefined term knowing that some tribes had been re-recognized outside the Part 83 process." Congress should likewise be presumed to have been aware that there were tribes on the first, post-List Act *Federal Register* list that had been administratively recognized outside the Part 83 process. *Amador County*, 872 F.3d at 1030 (citing *Interstate Commerce Comm'n v. Texas*, 479 U.S. 450, 458 (1987)).

*Defs' Revised Reply in Supp. of Mot. for Judgment on the Pleadings*

because of their status as Indians"). (Emphasis added). The majority of listed tribes were recognized before the Part 83 process was adopted, and the process is not available to those tribes. 25 C.F.R. § 83.3 (Part 83 "applies only to indigenous entities that are not federally recognized Indian tribes"). Plaintiffs' reliance (Opp. Mem. 12-13) on *Timbisha Shoshone Tribe v. Dep't of Interior*, 824 F.3d 807 (9th Cir. 2016); *Carcieri v. Salazar,* 555 U.S. 379 (2009); *Kahawaiolaa v. Norton*, 386 F.3d 1271 (9th Cir. 2004); *California Valley Miwok v. United States*, 515 F.3d 1262 (DC Cir. 2008); *Passamaquoddy Tribe v. State of Maine*, 75 F.3d 784 (1st Cir. 1996); *Mackinac Tribe v. Jewell*, 829 F.3d 754 (D.C. Cir. 2016); *Muwekma Ohlone v. Salazar*, 708 F.3d 209 (D.C. Cir. 2013); and *James v. U.S. Dep't of Interior*, 824 F.2d (D.C. Cir. 1987), does nothing to advance Plaintiffs' false legal conclusion (Opp. Mem. 13) that "to receive IRA benefits, a tribe must first obtain Part 83 recognition." While the statement may be true for currently unrecognized tribes, it has no application to already recognized tribes such as the Ione Band.

Plaintiffs' untimely contention that the Tribe is not federally recognized is contrary to binding Ninth Circuit precedent and fundamentally fails to state a claim for which relief can be granted. The Tribe has remained on the official list of federally recognized tribes since 1995, undisturbed by Congress, the sole entity with authority to delist or terminate the Tribe today.

**D.   Plaintiffs misstate the significance of Interior's *Federal Register* List of federally recognized tribes and the significance of the Tribe's inclusion on it since 1995**

Plaintiffs devote an entire argument section to support the nonsensical header that: "The inclusion of the Ione Band on the BIA list of entities entitled to receive services from the BIA did not make it a Part 83 tribe." They falsely attribute (Opp. Mem. 14) to Defendants the position that the Tribe need not obtain Part 83 recognition because of BIA's inclusion of the Tribe on the Federal Register list of recognized tribes. Again, and as affirmed by the Ninth Circuit, it was the Tribe's prior, pre-Part 83, federal recognition reaffirmed by Assistant Secretary–Indian Affairs Deer that qualified the Tribe for inclusion on the *Federal Register* list. *Amador County*, 872 F.3d at 1028-29.

Next Plaintiffs patently mischaracterize (Opp. Mem. 14) the *Federal Register* list mandated by Congress in the List Act, claiming it "not a list of federally recognized tribes." This contention is directly refuted by the List Act: "(6) the Secretary of the Interior is charged with the responsibility of keeping *a*

*Defs' Revised Reply in Supp. of Mot. for Judgment on the Pleadings*

8

*list of all federally recognized tribes*; … (8) the list of federally recognized tribes which the Secretary publishes should reflect *all of the federally recognized Indian tribes in the United States* which are eligible for the special programs and services provided by the United States to Indians because of their status as Indians." 108 Stat. 479. (Emphasis added). Also mischaracterized (Opp. Mem. 15) is the 1995 Federal Register list on which the Tribe first appeared. In an attempt to dismiss the list's relevance and bolster their contention that the Tribe's inclusion on the list did not reflect federally recognized tribal status, Plaintiffs claim (Opp. Mem. 15), falsely, that the 1995 list included non-tribal Alaska Native Claims Settlement Act ("ANCSA") corporations. This claim is refuted by the list itself, which includes Alaska tribes and no ANCSA corporations. *See* 60 Fed. Reg. 9250-01 (Feb. 16, 1995) ("The October 1993 list represents a list only of those villages and regional tribes which the Department believes to have functioned as political entities, exercising governmental authority."). Plaintiffs' attempt (Opp. Mem. 17) to delegitimize the *Federal Register* list is likewise not supported by their citation to *LaPier v. McCormick*, 986 F.2d 303, 305 (9th Cir. 1993) (describing the Secretary's list, pre-List Act, as the best resource for verifying the federally recognized status of a tribe), or *United States v. Zepeda*, 792 F.3d 1103, 1114 (9th Cir. 2015) ("In most cases, the judge will be able to determine federal recognition by consulting the relevant BIA List."). As the Ninth Circuit has found, the Tribe is included on the Secretary's list of federally recognized tribes because of its reaffirmed, pre-Part 83, recognized status.

### E.     Plaintiffs mischaracterize the *Burris* litigation by ignoring its critical final stages

In furtherance of their futile assault on the Tribe's status, Plaintiffs misrepresent (Opp. Mem. 19-20) the *Burris* litigation. That litigation sought to have the court direct the Interior Department to include the Ione Band on the *Federal Register* list of federally recognized Indian tribes, and the Interior Department, in defense, initially insisted that the Band had to proceed through the Part 83 process (*i.e.*, exhaust its administrative remedies) to accomplish that end. By 1995, however, the Department had formally notified the *Burris* court of its correction of that erroneous position in an *amicus curiae* brief to that court.

*Defs' Revised Reply in Supp. of Mot. for Judgment on the Pleadings*

9

Not only is the *Burris* litigation irrelevant today, it cannot estop Interior's treatment of the Ione Band as a recognized tribe in any event. Plaintiffs assert that a 1992 summary judgment and 1996 final judgment in the litigation are binding on Federal Defendants today and compel the conclusion that the Tribe is not federally recognized. Compl. ¶¶ 133-135, Opp. Mem. 20. Plaintiffs fail to acknowledge that, after former Assistant Secretary–Indian Affairs Ada Deer's 1994 reaffirmation of the Tribe's pre-Part 83 recognized status, and at the request of the court, in September of 1995 the United States filed a brief clarifying that the Tribe had been included on the *Federal Register* list of recognized tribes, and that such listing was conclusive of the Tribe's recognized status as confirmed by Congress in the List Act. *Burris* Dkt. No. 413. Plaintiffs' claim, Compl. ¶ 133, misrepresents the nature of the 1996 *Burris* judgment and its underlying findings. Those findings concerned the lack of duly elected tribal government representatives, *not* the existence of the Tribe itself. Indeed, Magistrate Judge Nowinski recommended dismissal of the case because, by that point, Judge Karlton had referred the matter to him for an evidentiary hearing to confirm the tribal government authorized to proceed [on] behalf of the Tribe. *See County of Amador*, 872 F.3d at 1029 ("In 1996, the Band held tribal government elections that resulted in Interior's acknowledging the Band's tribal government.") In sum, the district court's decisions in *Burris* have no estoppel effect or relevance to this suit. *See In re Burrell*, 415 F.3d 994, 999 (2005) (citing *United States v. Munsingwear, Inc.*, 350 U.S. 36, 39 (1950)).

## CONCLUSION

For the foregoing reasons, Federal Defendants respectfully request that this Court grant their motion for judgment on the pleadings and dismiss claims one through six of Plaintiffs' Complaint.

Dated: August 20, 2020                     Respectfully submitted,

                                           ERIC GRANT
                                           Deputy Assistant Attorney General

                                           By: /s/ Judith Rabinowitz
                                           JUDITH RABINOWITZ
                                           Indian Resources Section
                                           Environment & Natural Resources Division
                                           United States Department of Justice
                                           Counsel for Federal Defendants

*Defs' Revised Reply in Supp. of Mot. for Judgment on the Pleadings*