1   **KENNETH R. WILLIAMS (SBN 73170)**
**Attorney at Law**
2   **980 9th Street, 16th Floor**
**Sacramento, CA 95814**
3   **Telephone:  (916) 449-9980**

4   *Attorney for Plaintiffs*

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12  NO CASINO IN PLYMOUTH,              Case No. 2:18-cv-01398-TLN-CKD
    DUEWARD W. CRANFORD II, Dr.
    ELIDA A. MALICK,   JON
13  COLBURN, DAVID LOGAN,
    WILLIAM BRAUN and CATHERINE         **PLAINTIFFS' OPPOSITION TO**
14  COULTER,                            **THE IONE BAND'S MOTION FOR**
                                        **"LIMITED INTERVENTION"**
15                        Plaintiffs,
                                        **AND**
16         v.
                                        **REQUEST FOR SANCTIONS AND**
17  NATIONAL INDIAN GAMING              **REASONABLE ATTORNEYS FEES**
    COMMISSION, JONODEV                 **PURSUANT TO FRCP 11**
18  CHAUDHURI former NIGC Chairman;
    DEPARTMENT OF INTERIOR;             Date:   January 27, 2022
19  RYAN ZINKE, Secretary of  Interior;  Time:  2:00 p.m.
    DAVID BERNHARDT, Deputy             Place: Courtroom No. 2
20  Secretary of the Interior and former
    Solicitor; DONALD E. LAVERDURE
21  former DOI employee; and AMY
    DUTSCHKE, BIA Pacific Regional
22  Director and member of the Ione Band,  Judge: Honorable Troy L. Nunley

23
              Defendants.
24

25

26

27

28
                                    0

**INTRODUCTION**

Plaintiffs, No Casino In Plymouth, Dueward W. Cranford II, Dr. Elida A. Malick, Jon Colburn, David Logan, William Braun and Catherine Coulter, (collectively referred to as NCIP) submit this memorandum in opposition to the Ione Band's motion for "limited intervention" (Court Documents (CD) 62 & 62-1). The Ione Band claims that it has the right to intervene and participate in this case as a party pursuant to Federal Rule of Civil Procedure (FRCP), Rule 24(a)(2). The Ione Band is requesting leave to intervene for the "limited" purpose of filing a "proposed" motion to dismiss (CD 62-2) pursuant to FRCP Rules 12(b)(7) and 19.[1]

Plaintiffs oppose Ione Band's motion to intervene because it has not met any of the requirements for intervention as a matter of right pursuant to FRCP 24(a)(2). A four-part test has been adopted by the Ninth Circuit to determine whether applications for intervention as a matter of right should be granted:

> An order granting intervention as of right is appropriate if (1) the applicant's motion is timely; (2) the applicant has asserted an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that without intervention the disposition may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties. (Citations omitted.) *County of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986)

---

[1] The Ione Band's proposed motion to dismiss, based on their claim that this lawsuit is barred by tribal immunity, is completely without merit for several reasons. If necessary, Plaintiffs will file an opposition to that motion if and when the Court grants intervention and schedules it for hearing. But that should not be necessary; the Court should deny the Ione Band's motion for limited intervention

An applicant seeking to intervene as a matter of right under Rule 24(a)(2) must also demonstrate that it possess Article III standing to participate in the lawsuit as a party. *Jones v. Prince George's Cty.,* 348 F.3d 1014, 1017 (D.C. Cir. 2003). In the D.C. Circuit the intervenor's Article III standing is a separate element. *Id.* In contrast, in the Ninth Circuit the requirement of Article III standing is incorporated into the four-part intervention test as part of the requirement that the applicant for intervention must "assert an interest relating to the property or transaction which is the subject of the action." *Portland Audubon So. v. Hodel,* 866 F. 2d 302, 308 n. 1 (9th Cir. 1989).  Regardless of the process, the applicant must establish that it has Article III standing to intervene under Rule 24(a)(2).  The Ione Band failed to establish that it has Article III standing to intervene in this lawsuit

Finally, it is also important to note at the outset that this Court already granted the Ione Band's motion for permissive intervention, pursuant to FRCP Rule 24(b), in the previous lawsuits regarding these same issues. (A copy of this Court's September 12, 2013 Order granting the Ione Band's motion for permissive intervention is attached.)  After being given permission to intervene, the Ione Band actively litigated the issues in the prior two cases as a defendant for the next five years.  And, by intervening and litigating the prior cases, the Ione Band waived any claim of tribal immunity it may have had with respect to the issues in those cases - which are the same issues involved in this lawsuit.  Finally, as discussed below, once waived, tribal immunity cannot be reasserted with respect to the same issues.

2

Given this history, Plaintiffs suggest and have no objection if the Court treats the Ione Band's "limited" motion for intervention pursuant to Rule 24(a)(2) as a motion for permissive intervention pursuant to Rule 24(b). The Court could then grant the Ione Band's motion for permissive intervention on the same basis that it granted its earlier motion as stated in the attached Order.  This approach will allow the Ione Band to continue its involvement in this ongoing litigation on the same basis as before. And, in that event, it will not be necessary for the Court to schedule or decide, the proposed motion to dismiss.  Instead, the Court should find that proposed motion to dismiss is moot because the Ione Band has long since waived any claim of tribal immunity it may have had regarding these issues.

Regardless, for the reasons outlined below, the Court should deny the Ione Band's motion for "limited" intervention pursuant to Rule 24(a)(2).  Instead, Plaintiffs ask the Court allow this litigation to continue to completion and judgment without the untimely, unnecessary and disruptive involvement of the Ione Band.

## ARGUMENT

**A. The Ione Band waived its claimed tribal immunity when it intervened and participated as a defendant in the prior litigation on these same issues.**

The Complaint in this case was filed on May 22, 2018. (CD No. 1.) The focus of this lawsuit is a Record of Decision (ROD) issued by Donald Laverdure, the then acting Assistant Secretary of Interior for Indian Affairs.  The ROD was dated May 24, 2012 and was published in the Federal Register on May 30, 2012 (77

3

Fed. Reg. 31871-31872, May 30, 2012.)  The ROD involves privately owned lands located in and near the City of Plymouth, Amador County.

Mr. Laverdure concluded that this privately owned land was eligible to be taken into trust for the Ione Band under the Indian Reorganization Act of 1934 (IRA). Mr. Laverdure also opined that, if the land was taken into trust pursuant to his ROD, it would be eligible for Indian gaming under the Indian Gaming Regulatory Act of 1988 (IGRA). This conclusion is not only wrong, it is now moot because the land was never taken into trust pursuant to the ROD. And any authority to take such land into trust expired on May 30, 2018.  28 U.S.C. 2401(a).

In any event, as this Court knows, the 2012 ROD triggered at least three separate lawsuits against the DOI challenging the ROD and the related issues:

1. *County of Amador v. DOI et al.,* Case No. 2:12-cv-1710 TLN. The County challenged the 2012 ROD as being arbitrary and capricious. The Ione Band was granted leave to intervene in this case pursuant to Rule 24(b) without objection from the County. And, the Ione Band did not claim the County of Amador's lawsuit was barred by tribal immunity. Instead, they waived any immunity and ligated the case as a Defendant. In fact, the Ione Band and DOI prevailed in the Ninth Circuit. *County of Amador v. DOI et al.,* 872 F. 3d 1012 (9th Cir. 2017).[2]

---

[2] Although the Ione Band does not mention this "success" in their motion to intervene, they do cite it in their proposed motion to dismiss without revealing that they were a co-defendant with DOI in this appeal.  And incredibly, the Ione Band cites their appeal for the notion that their obligations and the obligations of the DOI are "inconsistent."  This is an attempt by the Ione Band to deceive the Court into thinking that it was not as a party that waived its immunity, in the prior cases.

4

2. *NCIP et al. v. DOI et al.,* Case No. 2:12-cv-1748 TLN.  NCIP challenged the 2012 ROD as being arbitrary and capricious, without authority, unconstitutional, and contrary to law. The Ione Band was granted leave to intervene in this case as a Defendant.  (See attached Order.) The Ione Band did not claim that NCIP's lawsuit was barred by tribal immunity. Instead, they waived their immunity and litigated the merits in this Court.  But, instead of addressing the merits, the Ninth Circuit held that this Court's previous finding that NCIP had standing could not be supported by the administrative record. Declarations were required. Thus, the Ninth Circuit dismissed NCIP's first case. (Case No. 15-17189).

3. *NCIP et al. v. NIGC et al.,* Case No. 2:18-cv-1398 TLN.  The statute of limitations had not expired when NCIP's prior lawsuit was dismissed and NCIP was able to update and file this lawsuit challenging the 2012 ROD. And, as a precaution, Plaintiffs' declarations establishing standing have already been filed. (CD Nos. 47 & 51.) The most significant new factor was that, despite that the ROD, none of the subject parcels was taken into trust within the allowed six years. And, given the fact that the land was not taken into trust pursuant to the 2012 ROD before it expired, the prospect of a legal casino being constructed on that property was highly unlikely. So, at the request of the federal defendants, the Court dismissed the seventh claim in the complaint, which challenged the proposed casino as a public nuisance, without prejudice, subject to being refiled by Plaintiffs "if and when the claim becomes ripe for adjudication." (CD 38)

5

On March 11, 2019, the Court filed a Related Case Order at the request of the federal defendants which related this case with the two prior cases. (CD 24; copy attached.)  This Related Case Order was filed in all three lawsuits.  And the Ione Band, as a defendant in the first two cases, was electronically served with a copy of the Related Case Order.  Thus, at least by March 11. 2019, the Ione Band had notice of this lawsuit but did not seek leave to intervene until almost three years later.

By successfully intervening, and actively participating in the first two lawsuits, the Ione Band made itself available and vulnerable to complete adjudication by this court of the issues in the litigation and waived any right to claim immunity from such an action. *United States v. State of Oregon,* 657 F.2d 1009, 1014 (9th Cir. 1981).  By voluntarily intervening in a lawsuit, a tribe consents to the jurisdiction of the court to determine all the claims brought even if that determination is adverse to the tribe. *Id.* See also *Rupp v. Omaha Indian Tribe,* 45 F. 3d 1241, 1245 (8th Cir. 1995) (quoting F. Cohen, *Handbook of Federal Indian Law* 324 (1982)).  A tribe assumes the risk of an adverse determination and cannot, after the fact, assert tribal immunity. *Id*

It is undeniable that the Ione Band waived its claim of tribal immunity and actively participated in the earlier lawsuits as a defendant.  Thus, the Ione Band's motion for "limited" intervention to assert tribal immunity that it has waived is patently frivolous and should be denied.  Likewise, the Ione Band's "proposed" motion to dismiss based on tribal immunity should be preemptively denied.

6

**B. The Ione Band failed to disclose that it intervened, and waived its tribal immunity, in the prior litigation.  This omission violates FRCP 11 and reveals that the Ione Band's motion is deceptive and patently frivolous.**

Perhaps, the most troubling aspect of the Ione Band's motion is their failure, and defense counsel's failure, to disclose, much less discuss, the prior waivers of tribal immunity of the Ione Band with respect to the ROD and the related issues litigated in those prior cases.  Given the active participation of the Ione Band in the prior lawsuits, this omission cannot be attributed to ignorance or inadvertence.  Instead, it is a clear violation of counsel's "duty of candor" to the Court. *Moser v. Bret Harte Union H.S. Dist.,* 366 F. Supp. 2d 944, 949 (E.D. Cal. 2005).

The Ninth Circuit has held that counsel's duty of full disclosure "is an important one, especially in the district courts, where its faithful observance by attorneys assures that judges are not victims of lawyers hiding the ball." *Transamerica Leasing v. Compania Anonima,* 93 F.3d 675 (9th Cir. 1996). Violations of counsels' duty of candor can result in the imposition of sanctions. *Id.* A counsel's failure to disclose pertinent facts and relevant law is also a direct violation of FRCP Rule 11. *Id.* It is also a violation Cal. Rules Prof Conduct, Rule 5-200(B)(counsel shall not mislead the court regarding the facts or law).

Rule 11 also creates and imposes on a party and/or their counsel an affirmative duty to investigate the law and the facts before filing. *Rachel v. Banana Republic, Inc.,* 831 F.2d 1503, 1508 (9th Cir. 1987). In this case, the Chairwoman of the Ione Band, Sara Deutschke, is also an attorney (SBN 244848). Thus she and her

7

lawyers, John Maier (SBN 191416) and Simon Gertler (SBN 326613), had a duty to investigate and verify that the Ione Band had not waived its tribal immunity before filing the motion for limited intervention to assert tribal immunity and the "proposed" motion to dismiss based on tribal immunity.  Their failure to investigate and discern these obvious facts before filing the motions is a violation of FRCP Rule 11 that was made worse by their efforts to conceal these facts from the Court.

Rule 11 gives the court authority to issue sanctions against a party whose attorney of record signs a "pleading, written motion, or other paper" that is not well grounded in fact, is not warranted by existing law, is not made in good faith, or is brought for any improper purpose." *Christian v. Mattel, Inc.,* 286 F.3d 1118, 1131 (9th Cir. 2002).  Rule 11 provides in part that: "If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including reasonable attorney's fees." See *Golden Eagle Distributing Corp. v. Burroughs,* 801 F.2d 1531 (9th Cir. 1986).

The Ione Band's effort to "hide" its waivers of tribal immunity should be sanctioned by the Court as mandated by FRCP Rule 11.  The Ione Band's motions should be denied with prejudice.  And Plaintiffs should be awarded reasonable attorney's fees that have been, or will be, incurred in opposing these motions.

### C. The Ione Band lacks Article III standing, and offered no evidence that it has Article III standing, to intervene and participate in this case as a matter of right under FRCP Rule 24(a)(2).

Article III standing requires a showing of injury-in-fact, causation, and redressability. See *Deutsche Bank Nat'l Tr. Co. v. Fed. Deposit Ins. Corp.,* 717 F.3d 189, 193 (D.C. Cir. 2013).  The Supreme Court described the "injury-in-fact" element as requiring a showing of an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical. *Lujan v. Defs. Of Wildlife,* 504 U.S. 555, 560 (1992).  To establish standing, the petitioner for intervention must establish these factors by affidavit or other evidence of specific facts. *Id.* at 562. Conclusory statements are not sufficient.

The Ione Band submitted no affidavits or any other evidence to support its contention that it has standing to intervene and participate in this lawsuit as a matter of right pursuant to Rule 24(a)(2).  The conclusory and unsupported statements made by the Ione Band in their motion to intervene are not evidence and are not sufficient to establish standing.  Instead, through a series of falsehoods, the Ione Band misrepresents the nature of this lawsuit to fabricate their standing claim.

First, the Ione Band has no property interest in this case sufficient to establish its standing to intervene. As stated above, none of the parcels identified in the ROD were taken into trust pursuant to the 2012 ROD before it expired on May 30, 2018 or before this lawsuit was filed on May 22, 2018.  Thus this case does not involve any property, or interest in property, claimed by the Ione Band.

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Furthermore, the Ione Band offered no evidence, affidavits or deeds, to contrary.  Instead in their motion to intervene, the Ione Band makes the conclusory and unsupported claim that "the 2012 ROD was not fully effectuated by agency staff until March 20, 2020." (CD 62-1 p. 2.)  The Ione Band offered no declarations or any other admissible evidence to support this odd statement. And, consequently, it cannot be a basis to establish the Ione Band's standing to intervene in this case. Furthermore, even if it were true, this conclusory statement is not relevant to this lawsuit.  It supposedly involves actions taken by BIA staff on March 20, 2020 – almost two years **after** this lawsuit was filed on May 22, 2018.

Second, the Ione Band claims that this lawsuit involves a challenge to their proposed casino.  It doesn't. As stated above, claim seven in the initial complaint did include a challenge to the proposed casino. But the 2012 ROD expired before any parcels were taken into trust.  Thus none of the parcels were or could be eligible for Indian gaming pursuant to IGRA. Consequently, claim seven challenging the proposed casino was dismissed, without prejudice, as being unripe for adjudication. At this point, this lawsuit does not involve a proposed casino.  And the Ione Band's desire to protect an amorphous right to build a casino somewhere and sometime in the future, it not sufficient for it to establish standing in this case.

Third, the Ione Band claims that this lawsuit challenges their tribal gaming ordinance. That is not correct. Instead, this lawsuit challenges the NIGC's jurisdiction to approve that ordinance because it is not linked to any Indian land

10

eligible for gaming. *Michigan v. Bay Mills Ind. Cmty,* 572 U.S. 782 (2014). Even the Ione Band in its motion admits that its gaming ordinance "is not specific to any particular site." (CD 62-1 p. 2.) The NIGC lacks the jurisdiction under IGRA to approve non-site specific gaming ordinances, like the Ione Band's ordinance.

Finally, the Ione Band claims that it has standing to intervene in this case because Plaintiffs are challenging their "status as a federally recognized tribe." That is not true. The Ione Band's tribal status was determined 30 years ago in a lawsuit they brought against the DOI. *Ione Band et al. v. Harold Burris (DOI) et al.* (ED.Cal No.CIV-S-90-0993).  The Ione Band sued the DOI to establish that it is a federally recognized tribe.  Judge Karlton of this Court agreed with the position of the DOI and rejected the arguments of the Ione Band. Specifically, Judge Karlton held the Ione Band is not, and has never been, a federally recognized tribe. Furthermore, Judge Karlton held that the Ione Band had not exhausted its remedies under 25 CFR Part 83 – the only administrative way for a group of Indians to become a federally recognized tribe.  The Ione Band is bound by Judge Karlton's decision that they are not a federally recognized tribe.

In this case, Plaintiffs are not challenging or asking this Court to re-litigate the Ione Band's tribal status. Instead, Plaintiffs are relying on the decision of Judge Karlton that the Ione Band is not a federally recognized tribe and has not complied with Part 83.  Therefore, the Ione Band is not eligible for a fee-to-trust transfer under the IRA or Indian gaming benefits under IGRA.

11

1
2
3
4
5
6
7
8
9
10
11

This case was brought pursuant to the APA to enforce compliance with the IRA and IGRA by the DOI, NIGC and federal officials. The federal agencies and federal officials "charged with compliance" can be the only defendants in an APA action; "all other entities have no right to intervene as defendants." *Portland Audubon Society v. Hodel,* 866 F.2d 302, 309 (9th Cir. 1989). "[A]n absent party has no legally protected interest at stake in a suit merely to enforce compliance with administrative procedures." *Colusa Indian Cmty v. California,* 547 F.3d 962, 971 (9th Cir. 2008). *Makah Indian Tribe v. Verity,* 910 F.2d 555, 558 (9th Cir. 1990).

12
13
14
15
16
17
18
19
20
21
22
23

The Ione Band has provided no evidentiary support for its claim that it has Article III standing or that this case involves any property or transaction by the Ione Band. *Lujan v. Defs. Of Wildlife,* 504 U.S. at 562. The 2012 ROD was never implemented before it expired in 2018. The Ione Band does not have standing to challenge the unimplemented 2012 ROD. *N. Alaska Env. Ctr. v. Hodel,* 803 F.2d 466 (9th Cir. 1986) Although the Ione Band may be interested in procedural issues in this case, it lacks standing and the requisite interest in the subject matter of this lawsuit to support its request for intervention as a matter of right pursuant to Rule 24(a)(2). *Id. See Westlands Water District v. U.S.,* 700 F.2d 561 (9th Cir. 1983).

24
25
26

**D. The Ione Band's Motion for "limited" intervention for the sole purpose of asserting tribal immunity to divest this Court of jurisdiction to hear this case is an abuse of the judicial processes and not allowed by FRCP Rule 24.**

27
28

The Ione Band's motion for limited intervention is not an appropriate procedure under Rule 24 or any other procedural rule. Instead, it is an abuse of the

12

judicial process designed to disrupt and delay this litigation and to preclude this Court form reaching a final decision and judgement on the merits in this case.

The Federal Rules of Civil Procedure expressly provide for only two methods of intervening: intervention as a matter of right under Rule 24(a) and permissive intervention under Rule 24(b). Neither method of intervention provides of "limited" intervention by a party that lacks standing for the sole purpose of challenging and/or divesting the Court of jurisdiction while the intervener remains immune from the power of the court adjudicating the case. Just the opposite is true. By intervening in a lawsuit as a defendant, a tribe waives its tribal immunity and consents to the jurisdiction of the court to determine all the claims brought even if that determination is ultimately adverse to the tribe. *U.S. v. State of Oregon,* 657 F.2d 1009, 1014 (9th Cir. 1981). See *Wichita & Affiliated Tribes of Oklahoma v. Hodel,* 788 F.2d 765, 773 (D.C. Cir. 1986). A tribe that intervenes as a defendant assumes the risk of an adverse determination and cannot, after the fact, assert tribal immunity with respect to the same issues. *Id.*

Furthermore, the assertion of tribal immunity to divest a court of jurisdiction is not a proper basis for intervention pursuant to Rule 24(a)(2). As explained by Judge Randolph in his concurrence in *Amador County v. DOI, 772* F.3d 901, 906 (D.C. Cir. 2014), tribal immunity cannot, *by itself*, be the interest that provides the basis for intervention pursuant to Rule 24(a)(2):

13

> The Tribe wanted to intervene in order to assert that it was an indispensable party under Rule 19(a). The idea being that the Tribe could then invoke its sovereign immunity and have the court dismiss Amador County's action against the [DOI]. In terms of Rule 24(a)(2), the Tribe claimed that the U.S. did not "adequately represent" the Tribe's "interest"—which the Tribe defined as its sovereign immunity.
>
> The strategy was clever but it would not have worked. <u>The Tribe's interest in its sovereign immunity was not -in the words of Rule 24(a)(2) -"an interest relating to the property or transaction that is the subject of the action."</u> The very point of the Tribe's motion was to inject sovereign immunity into the case. The Tribe therefore would not have qualified for intervention as of right even if it had timely filed its motion. (Emphasis added.)

Although the full D.C. Circuit panel found that the intervenor's application was untimely, and therefore did not address the merits of the application, Judge Randolph's concurrence was correctly reasoned and should be followed here.

The cases cited by the Ione Band (CD 62-1 p.4.) do not support its contention that a motion to for limited intervention to assert tribal immunity is appropriate.

The Ione Band first cites *Stringfellow v. Concerned Neighbors in Action,* claiming that the Supreme Court upheld a district court's grant of "limited" intervention. That is not correct. That case did not involve a request for "limited" intervention.  Instead, the Supreme Court upheld an order granting permissive intervention pursuant to Rule 24(b) with three procedurally strict conditions.

*Dine Citizens Against Ruining Our Env't v. BIA,* 932 F.3d 843(9th Cir. 2019) involved an environmental challenge to a coal mine owned by the Navajo Transitional Energy Company (NTEC). The district court first granted NTEC's

14

application to intervene as a matter of right because it owned the subject mine. Thereafter, NTEC moved to dismiss base on tribal immunity. *Id* at 850. The NTEC ownership of the mine, not its claim of tribal immunity, was the basis for intervention pursuant to Rule 24(a)(2). In contrast, this case does not involve a mine or any property owned by the Ione Band. Consequently, it does not have a property right or standing to intervene in this case. And the Ione Band's apparent desire to assert tribal immunity and deprive this court of jurisdiction over this case is not a basis, by itself, for intervention pursuant to 24(a)(2).

Likewise, in the third (unpublished) decision relied on by the Ione Band, the District Court for the Southern District of California went through the same two-step analysis. See *Backcountry Against Dumps v. BIA,* No. 20-cv-2343 JLS(DEB). That case involved an approval by the BIA of a lease between the tribe and a private company for the development of a wind energy project to be built on the tribe's reservation.  The district court first held that the tribe's ownership of the lease was a sufficient basis for intervention pursuant to Rule 24(a)(2). Thereafter the tribe filed a motion to dismiss based on tribal immunity.  In contrast, this case does not involve a lease or property owned by the Ione Band. And the Ione Band's claim of tribal immunity, by itself, is not a basis for intervention as a matter of right.

The Ione Band's motion for limited intervention pursuant to Rule 24(a)(2) for the sole purpose of asserting tribal immunity and divesting this Court of jurisdiction to complete the adjudication of this case, is not only inappropriate. It is

15

an abuse of the judicial process designed to deprive this Court of jurisdiction and the ability to finally decide this case. The Ione Band's motion should be denied and the adjudication of this case should be allowed to continue to completion.

**E. The Ione Band's motion for limited intervention was not timely filed. Instead it is a last minute, prejudicial abuse of the judicial processes to disrupt this case and the Court's final consideration of the pending MJOP.**

In determining the timeliness of a motion to intervene, three factors should be considered: (1) the stage of the proceedings at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay. *United States v. Oregon, supra.*

The Ione Band's contention that this case "remains nascent" is nonsense and ignores the fact that this lawsuit was filed almost four ago (CD 1) and has been actively litigated by the parties. Furthermore, contrary to the suggestion in the Ione Band's motion a request to intervene pursuant to Rule 24 cannot be brought at "any time." In fact, this Court in its Initial Pretrial Scheduling Order (CD 25) required that any request to add parties had to be brought within 60 days of service of the complaint on the last party – which occurred on August 11, 2018 (CD 12 &13).

Less than a week after service was complete, on August 17, 2018, the federal defendants filed an answer to the first six claims in the complaint (CD 14) and a motion to dismiss the seventh claim (CD 15). The motion to dismiss the seventh claim was heard on March 10, 2020. And, as noted by the Ione Band, the seventh claim challenging the potential construction of the casino was dismissed, without

16

prejudice, on ripeness grounds. (CD 38). Specifically the seventh claim was dismissed because the subject parcels were not taken into trust before the 2012 ROD expired and it was unlikely that the proposed casino would ever be built.

And, consistent with their "hide-the-ball" tactics discussed above, the Ione Band does not reveal in its motion that Sara Dutschke, an attorney and Chairwoman of the Ione Band, and the Ione Band's counsel, attended the March 10, 2020 hearing.  Although they conferred with the federal defendants' counsel before the hearing, they remained silent sitting "behind the bar" during the hearing. And counsel for the federal defendants did not reveal their presence. Ms. Dutschke and counsel for the Ione Band could and should have spoken up and told the Court that Ione Band still planned on having the land taken into trust and building a casino. That information would have been extremely relevant and would have likely changed the decision to dismiss the seventh claim challenging the proposed casino.

Nor did counsel for the federal defendants disclose to the Court that, on March 9, 2020, one day before the March 10 hearing, the U.S. Solicitor withdrew the two-part procedure, outlined in the Cowlitz ROD, for determining whether a tribe is eligible for a fee-to-trust transfer under the IRA. Mr. Laverdure relied entirely on the Cowlitz two-part test to find that the Ione Band was eligible for a fee-to-trust transfer in his 2012 ROD. Plaintiffs' counsel did not learn about the Solicitor's March 9th decision until after the March 10th hearing.  Plaintiffs brought the March 9th decision to the Court's attention on April 29, 2020.  (CD 40).

17

Federal Defendants did not respond. Instead, the Federal Defendants filed a motion for judgement on the pleadings (MJOP) on June 5, 2020. (CD 41). Plaintiffs file an opposition to the MJOP on July 23 (CD 44). Plaintiffs asked the Court to deny MJOP and, instead, enter a judgment on the pleadings in the Plaintiffs' favor. (Id.). Additional briefing and declarations were filed and the MJOP is now under submission. (CD 55.) This issue is fully briefed. It would prejudicial to disrupt the Court's consideration of the MJOP at this final stage.

The Ione Band is apparently concerned about how this court might decide the MJOP. They should be concerned. The 2012 ROD expired without any land being taken into trust for their benefit. And the Solicitor withdrew the Cowlitz two-part procedure which was the basis for the 2012 ROD. A casino is no longer possible pursuant to the expired and withdrawn 2012 ROD. And the Solicitor's decision to withdraw the Cowlitz ROD confirms that the 2012 ROD is illegal and contrary to the Supreme Court's decision in *Carcieri v. Salazar,* 555 U.S. 379 (2009).

**F. The interests of the Federal Defendants and the Ione Band are identical. They were successful co-defendants with identical interests in the prior lawsuits. Federal Defendants can continue to represent those interests here.**

Any interest that the Ione Band may have in this case has been, and will continue to can continue to be, adequately represented the Federal Defendants. In fact, the Federal Defendants' pending MJOP is based entirely on the Ninth Circuit's decision in *County of Amador v. DOI et al.,* 872 F. 3d 1012 (9th Cir. 2017) which was rendered in favor of both the Federal Defendant and the Ione Band as co-

18

respondents to that appeal.  And the Ione Band concedes that they are in agreement with the Federal Defendants with respect to the MJOP. (CD 62-1 p. 9.)

But, although the Ione Band acknowledges that their interests and the interests of the Federal Defendants are aligned now, they claim that they may not be aligned later. The Ione Band explanation as to how their interests might diverge later is incredible and revealing as to their motivation for filing this motion.

The Ione Band claims that "NCIP's complaint" and its effort to enforce federal laws as alleged in the complaint, creates a risk that their interests and the federal defendants' interests might diverge. Specifically the Ione Band asserts that: "If the Court were agree [with NCIP], the federal defendants' interest in complying with federal law would force them to take a position that is in direct conflict with the [Ione Band's] interest." Basically the Ione Band contends that, if NCIP prevails, and the Federal Defendants were required to comply with federal laws, that would diverge from the Ione Band's interest in continuing to violate federal law.

This rationale explains why the Ione Band is seeking "limited" intervention. The do not want the risk of intervening as a party subject to the jurisdiction of this Court which includes the risk that they – like the Federal Defendants – would be bound by a decision by this Court in NCIP's favor.

This also explains why the Ione Band is enamored with the *Jamul* decision. *JAC v. Simermeyer,* 974 F.3d 984 (9th Cir. 2020). The tribal entity in that case, a quarter blood group of Indians created in 1991 known as the Jamul Indian Village

19

(JIV), was able to use its claim of tribal immunity to shield its and the federal defendants' illegal conduct. The Ione Band wants to do the same here. It seeks leave to intervene and assert tribal immunity as a cover for their illegal actions.

The Ione Band relies on the *Jamul* decision in its motion. Their reliance is misplaced. The JIV did not seek leave to intervene. Nor did the JIV ever waive their claim of tribal immunity. The *Jamul* decision did not involve a ROD or trust land. Instead, it involved an illegal casino constructed on easement and fee land. The *Jamul* decision was decided on September 8, 2020 and could not justify the Ione Band's 16 month delay in filing their motion intervention.  Finally the denial of the SC petitions were not on the merits and could not be a "change in circumstances" justifying a delay in the Ione Band's motion for limited intervention.

In summary, the Ione Band is misrepresenting and using the *Jamul* decision as a "red herring" to divert the Court's attention from the fact that their motion for limited intervention is not timely. This tactic should be rejected. Their motion was untimely and should be denied.

## CONCLUSION

The Ione Band's motion for limited intervention for the sole purpose of divesting this court of jurisdiction to complete this case should be denied.

Dated: January 13, 2022

/s/ Kenneth R. Williams
KENNETH R. WILLIAMS
Attorney for Plaintiffs

20

ATTACHMENT 1

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   NO CASINO IN PLYMOUTH and            No.  2:12-cv-1748 TLN CKD
     CITIZENS EQUAL RIGHTS ALLIANCE,
12
                  Plaintiffs,
13                                         **ORDER**
           v.
14
     THE UNITED STATES DEPARTMENT
15   OF THE INTERIOR, et al.,,

16                  Defendant.

17

18

19          This matter is before the court on the motion to intervene pursuant to Federal Rule of

     Civil Procedure 24[1] by the Ione Band of Miwok Indians ("Applicant").  (See Mot. for
20
     Intervention, ECF 35.)  Applicant specifically seeks permissive intervention under Rule 24(b).[2]
21
     (Id.)  Plaintiffs NO CASINO IN PLYMOUTH and CITIZENS EQUAL RIGHTS ALLIANCE[3]
22

23   _____

24   [1]      All further reference to Rule or Rules is to the Federal Rules of Civil Procedure, unless
     otherwise noted.
25   [2]      A similar motion was filed by Applicant in the related case of Amador County v. United
     States Dept. of the Interior, 2:12-cv-1710 TLN-CKD.  That motion, however, was unopposed.
26   [3]      Defendants Amy Dutschke, Paula Hart, Sally Jewell, National Indian Gaming
     Commission, John Rydzik, Tracie Stevens, U. S. Department of Interior, and Kevin Washburn
27   have filed a statement of non-opposition to the Applicant's motion to intervene.  (ECF 42.)
     Indeed, Defendants "regard [intervention] as appropriate in light of the Tribe's sovereign
28   authority to litigate on its own behalf."  (Id. at 2:16-17.)

                                               1

1    ("Plaintiffs") oppose intervention.[4]  (See Pls.' Opp'n to Mot. to Intervene, ECF 39.)

2                                    **BACKGROUND**

3            The Bureau of Indian Affairs ("BIA") issued a Record of Decision ("ROD") on March 24,

4    2012, placing approximately 228 acres of land located near the city of Plymouth into trust on

5    behalf of Applicant.  Plaintiffs in this case request that the court vacate the ROD.  Plaintiffs

6    maintain that the Secretary of the Department of Interior "lacks the statutory authority to take title

7    in trust to the parcel."  (Pls.' Compl., ECF 2, ¶ 2.)   Plaintiffs further allege that the "trust

8    acquisition proposed by the Secretary in the ROD is intended to facilitate the construction of a

9    major gambling casino" but "the [p]arcel is not eligible for Indian Gaming" because "The Indian

10   Gaming Regulatory Act (IGRA) prohibits Indian gaming on land acquired after 1998 unless one

11   of the statute's narrow exceptions apply."  (Id. ¶ 3.)

12                                     **STANDARD**

13           Apart from intervention as of right under Rule 24(a), a potential party may also

14   seek permissive intervention under Rule 24(b), which provides that:

15           On timely motion, the court may permit anyone to intervene who . .
             . has a claim or defense that shares with the main action a common
16           question of law or fact. . . .  In exercising its discretion, the court
             must consider whether the intervention will unduly delay or
17           prejudice the adjudication of the original parties' rights.

18

19           Unlike intervention as of right, permissive intervention focuses on possible prejudice to

20   the original parties to the litigation, not the intervenor**.**  See Donnelly v. Glickman, 159 F.3d 405,

21   411 (9th Cir. 1998); See also Moore's Federal Practice 3d Ed. § 24.10(1)(2003).   In reviewing a

22   motion to intervene, the court generally should accept as true the allegations and evidence

23   submitted by the Applicant.  Southwest Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 819-

24   820 (9th Cir. 2001).  The key inquiry in determining prejudice is the timeliness of the potential

25   intervenor's motion.  In determining timeliness, the court looks at:  "(1) the stage of the

26   proceeding at which an Applicant seeks to intervene; (2) the prejudice to other parties; and (3) the

27   ────────────────

28   [4]      Because oral argument will not be of material assistance, the court orders this matter
     submitted on the briefs. E.D. Cal. L.R. 230(g).

                                              2

1   reason for and length of the delay." United States ex rel. McGough v. Covington Technologies

2   Co., 967 F.2d 1391, 1394 (9th Cir.1992) (citing County of Orange v. Air California, 799 F.2d

3   535, 537 (9th Cir.1986)) (quotations omitted).

4                                    **ANALYSIS**

5           Applicant argues that intervention under Rule 24(b) is appropriate in this case because it

6   "is in the very earliest stages, which weighs heavily in favor of granting the Tribe leave to

7   intervene." (ECF 35 at 3:20-21.)  Applicant notes that "[n]o discovery has occurred in this case."

8   (Id. at 3:27.)  Applicant further avers that its interests in this case are vital in that Plaintiffs seek to

9   "reverse the Department[] [of the Interior's] determination that the Tribe is a restored tribe." (Id.

10  at 5:24-25.)  Applicant asserts that permissive intervention is appropriate because "[t]he main

11  action in this case involves claims and defenses addressing the Tribe's federal recognition, its

12  existence as a tribal government, and its status as a restored tribe with a right to restored federal

13  Indian lands." (Id. at 6:26-28.)

14          Plaintiffs oppose intervention, arguing that contrary to Applicant's position, this case is

15  not in the earliest stages of litigation; rather, Plaintiffs maintain that "[t]he parties are currently

16  considering whether dispositive motions are appropriate to resolve this case or whether it should

17  proceed to trial." (ECF 39 at 5:10-12.)  Importantly, however, Plaintiffs do not dispute

18  Applicant's contention that no discovery has yet taken place.  Plaintiffs do maintain, however,

19  that "[i]f the Ione Band is allowed to intervene[,] discovery would be wide open and the

20  resolution of this case will be delayed." (Id. at 6:15-16.)

21          The court finds that Applicant's motion to intervene is sufficiently timely to satisfy the

22  standard for permissive intervention and that intervention would not unduly prejudice Plaintiffs.

23  A cursory review of the docket demonstrates that, while Plaintiffs filed the underlying action little

24  more than a year ago, no substantive motions have been filed or ruled upon, thereby rendering

25  Applicant's motion timely pursuant to Rule 24.  See United States. v. Alisal Water Corp., 370

26  F.3d 915, 924 (9th Cir. 2004) ("The mere lapse of time, without more, is not necessarily a bar to

27  intervention.")  Indeed, the administrative record was filed a mere month prior to Applicant's

28  motion, on May 03, 2013.  (See Notice of Lodging of Administrative Record, ECF 31.)  Because

                                        3

1    Plaintiffs concede that no discovery has taken place in this action, and that no substantive motions

2    have been filed, the court finds unavailing Plaintiffs' contention that it would be prejudiced by

3    Applicant's intervention. The court finds that the relatively insignificant steps that have been

4    taken in this case, such as the filing of joint status reports, are insufficient to prejudice Plaintiffs if

5    Applicant is permitted to intervene pursuant to Rule 24(b). In the instant case, there is simply no

6    evidence that intervention by Applicant will prejudice the parties.

7           The court also finds, in its discretion, that Applicant has an abundant interest in the

8    resolution of this case. Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 527 (9th Cir. 1983).

9    (Explaining that a potential intervenor must show that it has an interest in the subject matter of the

10   litigation.) Specifically, the court finds that Applicant has aptly identified common questions of

11   law and fact with the original matter. That is, Plaintiffs' contention that Applicant is not a validly

12   recognized tribe under federal jurisdiction pursuant to the Indian Reorganization Act of 1934.

13   (See Pls.' Compl. ¶ 2.) Indeed, the essence of the underlying action concerns Applicant's very

14   existence as a federally recognized Indian Tribe. To forego Applicant the opportunity to have a

15   voice in this case would be to potentially foreclose any ability to litigate its rights as a federally

16   recognized Indian tribe. Plaintiffs do not dispute that Applicant has an interest in the subject

17   matter of this litigation; they only argue that Applicant's motion is untimely. The court therefore

18   finds in the instant case that Applicant has a significant interest in whether the Plaintiffs obtain

19   the relief requested—federal recognition of the Miwok Band of Indians and the validity of tribal

20   trust lands.

21                                   **CONCLUSION**

22          Based on the foregoing, Applicant's motion to intervene (ECF 35) in accordance with

23   Rule 24(b) is GRANTED.

24

25   Dated: September 9, 2013

26

27                                                     _____
                                                       Troy L. Nunley
28                                                     United States District Judge

                                              4

ATTACHMENT 2

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

11   COUNTY OF AMADOR,                          No. 2:12-cv-01710-TLN-CKD

12                  Plaintiff,

13        v.

14   UNITED STATES DEPARTMENT OF
     INTERIOR, et al.,
15
                    Defendants.
16
     NO. CASINO IN PLYMOUTH, et al.,            No. 2:12-cv-01748-TLN-CMK
17
                    Plaintiff,
18
          v.
19
     UNITED STATES DEPARTMENT OF                **RELATED CASE ORDER**
20   INTERIOR, et al.,

21                  Defendants.

22   NO. CASINO IN PLYMOUTH, et al.,            No. 2:18-cv-01398-MCE-CKD

23                  Plaintiff,

24        v.

25   NATIONAL INDIAN GAMING
     COMMISSION, et al.,
26
                    Defendants.
27

28

                                    1

1        The Court has reviewed Defendants' Notice of Related Case (ECF No. 6) and Plaintiffs'

2 Response thereto (ECF No. 7) filed in 2:18-cv-01398-MCE-CKD. Examination of the above-

3 captioned actions reveals that they are related within the meaning of Local Rule 123 (E.D. Cal.

4 1997). Pursuant to Rule 123 of the Local Rules of the United States District Court for the Eastern

5 District of California, two actions are related when they involve the same parties and are based on

6 a same or similar claim; when they involve the same transaction, property, or event; or when they

7 "involve similar questions of fact and the same question of law and their assignment to the same

8 Judge . . . is likely to effect a substantial savings of judicial effort." L.R. 123(a). Further,

9
10
11

> [i]f the Judge to whom the action with the lower or lowest number has been assigned determines that assignment of the actions to a single Judge is likely to effect a savings of judicial effort or other economies, that Judge is authorized to enter an order reassigning all higher numbered related actions to himself or herself.

12 L.R. 123(c).

13        Here, the actions involve similar and sometimes overlapping parties, are based on the

14 same or similar background facts, and involve similar questions of law. At a minimum, it appears

15 the actions involve the review of the same lengthy administrative record. Consequently,

16 assignment to the same judge would "effect a substantial savings of judicial effort." L.R. 123(a),

17 *see also* L.R. 123(c).

18        Relating the cases under Local Rule 123, however, merely has the result that both actions

19 are assigned to the same judge, it does not consolidate the actions. Under the regular practice of

20 this court, related cases are generally assigned to the judge and magistrate judge to whom the first

21 filed action was assigned.

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1        IT IS THEREFORE ORDERED that the action denominated 2:18-cv-01398-MCE-CKD

2  is reassigned to District Judge Troy L. Nunley and Magistrate Judge Carolyn K. Delaney, and the

3  caption shall read 2:18-cv-01398-TLN-CKD.  Any dates currently set in 2:18-cv-01398-MCE-

4  CKD are hereby VACATED, and the parties are ordered to refile any pending motions before this

5  Court.  The Clerk of the Court is to issue the Initial Pretrial Scheduling Order.

6        IT IS SO ORDERED.

7  Dated: March 8, 2019

8

9

10        Troy L. Nunley
          United States District Judge

3