UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NO CASINO IN PLYMOUTH, DUEWARD W. CRANFORD II, DR. ELIDA A. MALICK, JON COLBURN, DAVID LOGAN, WILLIAM BRAUN, AND CATHERINE COULTER,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL INDIAN GAMING COMMISSION, JONODEV CHAUDHURI, DEPARTMENT OF INTERIOR, RYAN ZINKE, DAVID BERNHARDT, DONALD E. LAVERDURE, AND AMY DUTSCHKE,<br><br>Defendants,<br><br>v.<br><br>IONE BAND OF MIWOK INDIANS,<br><br>Proposed Defendant Intervenor. | No. 2:18-cv-01398-TLN-CKD<br><br>**ORDER** |

This matter is before the Court on Defendants National Indian Gaming Commission ("NIGC"), E. Seqouyah Simermeyer, David Bernhardt, Kate MacGregor, and Tara Sweeney's (collectively, "Defendants") Motion for Judgment on the Pleadings pursuant to Federal Rule of

1

Civil Procedure ("Rule") 12(c).[1] (ECF No. 41.) Plaintiffs No Casino in Plymouth, Dueward W. Cranford II, Dr. Elida A. Malick, Jon Colburn, David Logan, William Braun, and Cathern Coulter (collectively, "Plaintiffs") oppose the motion. (ECF No. 44.) Defendants filed a reply. (ECF No. 52-1.) Also before the Court is the Ione Band of Miwok Indians' ("Proposed Defendant Intervenor") Motion to Intervene pursuant to Rule 24(a)(2) and Request for Judicial Notice. (ECF Nos. 62, 66.) Defendants filed a response. (ECF No. 63.) Plaintiffs filed an opposition to both the motion and request. (ECF Nos. 63, 68.) Proposed Defendant Intervenor filed a reply. (ECF No. 67.)

Having carefully considered the briefing filed by both parties, the Court hereby GRANTS Defendants' Motion for Judgment on the Pleadings without leave to amend and GRANTS Proposed Defendant Intervenor's Motion to Intervene and Request for Judicial Notice. (ECF Nos. 41, 62, 66.)

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On May 22, 2018, Plaintiffs filed a Complaint for declaratory and injunctive relief. (ECF No. 1.) Plaintiffs assert seven causes of action against Defendants.[2] (ECF No. 1 ¶¶ 1–7.) This lawsuit primarily presents a challenge to the Department of the Interior's ("DOI") Record of Decision ("ROD")[3] and approval of the Ione Band of Miwok Indians' ("Tribe" or "Band") gaming ordinance.[4] (*Id.* ¶¶ 1–2.) On May 24, 2012, then-Acting Assistant Secretary of Indian

---

[1]   Pursuant to Rule 25(d), Defendants replaced former NIGC Chairman Jonodev Chaudhuri with current Chairman Seqouyah Simermyer, former Secretary Ryan Zinke with Secretary David Bernhardt, former Deputy Secretary David Bernhardt with Kate Macgregor, and former Assistant Secretary-Indian Affairs Michael Black with Tara Sweeney. (ECF No. 41-1 at 2 n.1.) Defendants state Amy Dutschke is not a "proper party" to the case because she has been recused from the matter since 2001. (*Id.*)

[2]   The Court previously dismissed Plaintiffs' seventh cause of action for violations of Cal. Constitution, Art. 4, §§ 19(e), (f) and Cal. Penal Code § 11225 et seq. (ECF No. 38.)

[3]   A ROD is a notice of a final agency determination. *See Fed. Reg., The Daily J. of the U.S. Gov't*, Land Acquisitions; Ione Band of Miwok Indians of Cal., A Notice by the Indian Affairs Bureau on 05/30/2012, https://www.federalregister.gov/d/2012-13084.

[4]   Pursuant to the Indian Gaming Regulatory Act ("IGRA"), Indian tribes are required to receive NIGC's approval of a gaming ordinance before engaging in gaming. 25 U.S.C. §

Affairs Donald Laverdure ("Laverdure") issued the ROD at issue that announced the DOI's taking of 228.04 acres of land in Amador County into trust for the Band. (*Id.*) The ROD also allowed the Band to construct a casino complex and conduct gaming once the land was taken into trust. (*Id.* at ¶ 1.) Pursuant to IGRA, 25 U.S.C. § 2702(1), NIGC Chairman Jonodev Chaudhuri approved the Tribe's gaming ordinance on March 6, 2018. (*Id.* at ¶¶ 1, 91.)

Plaintiffs' claims challenge various determinations as follows: (1) the Tribe's gaming ordinance (*id.* at ¶ 107); (2) Laverdure's authority to approve the ROD under the Appointment Clause of the U.S. Constitution (*id.* at ¶ 118); (3) the Tribe's federally recognized status under the Indian Reorganization Act ("IRA") (*id.* at ¶ 127); (4) the Tribe's federal recognition under 25 C.F.R. Part 83 (*id.* at ¶ 136); (5) Defendants' violation of Plaintiffs' Equal Protection rights by favoring the Tribe, a race-based group, through approval of the ROD and gaming ordinance (*id.* at ¶¶ 141–43); and (6) Defendants' violation of federalism protections (*id.* at ¶ 150–51).

On June 25, 2020, Defendants filed the instant motion for judgment on the pleadings. (ECF No. 41.) On July 23, 2020, Plaintiffs filed an opposition to the motion (ECF No. 44), and on August 20, 2020, Defendants filed a reply (ECF No. 52-1).

On December 9, 2021, Proposed Defendant Intervenor, the Tribe, filed the motion to intervene. (ECF No. 62.) Proposed Defendant Intervenor seeks to intervene for the purpose of moving to dismiss pursuant to Rule 12(b)(7). (ECF No. 62-1 at 6.) The property and transactions that are the subject of this litigation challenge the "Tribe's land, the Tribe's status as a federally recognized tribe, and the validity of the Tribe's Gaming Ordinance." (*Id.* at 8.) On January 13, 2022, Defendants filed a response and Plaintiffs separately filed an opposition. (ECF Nos. 63, 64.) Proposed Defendant Intervenor filed a reply on January 20, 2022. (ECF No. 67.) On January 20, 2022, Proposed Defendant Intervenor filed a Request for Judicial Notice. (ECF No. 66.) On January 25, 2022, Plaintiffs filed an opposition. (ECF No. 68.)

///

///

---

2710(b), (d).

## II.   RULE 12(C) MOTION

### A.   Standard of Law

Rule 12(c) provides that, "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The issue presented by a Rule 12(c) motion is substantially the same as that posed in a Rule 12(b)(6) motion — whether the factual allegations of the complaint, together with all reasonable inferences, state a plausible claim for relief. *See Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054–55 (9th Cir. 2011). Thus, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

In analyzing a 12(c) motion, the district court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). However, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose (Chunie)*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Ventress v. Japan Airlines*, 603 F.3d 676, 681 (9th Cir. 2010) (citations omitted).

If the Court "goes beyond the pleadings to resolve an issue," a judgment on the pleadings is not appropriate and "such a proceeding must properly be treated as a motion for summary judgment." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989); Fed. R. Civ. P. 12(d). A district court may, however, "consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss [or motion for judgment on the pleadings] into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

///

4

B.     Analysis

Defendants move for judgment on the pleadings, arguing Plaintiffs cannot challenge the federal agency action because: (1) the Ninth Circuit has affirmed both the Tribe's status as federally recognized and Laverdure's authority to issue the 2012 ROD as Acting Assistant Secretary of Indian Affairs; and (2) the Complaint fails to state claims for which relief can be granted. (ECF No. 41-1 at 7–9, 11–13.) The Court will address each argument in turn.

          *i.*     *Whether Ninth Circuit Authority Disposes of Plaintiffs' Claims*

Defendants argue the Ninth Circuit in *County of Amador* issued dispositive rulings on Claims One through Four[5] in the instant matter, including: (1) the Tribe's gaming ordinance; (2) Laverdure's authority to issue the ROD; (3) the Tribe's federally recognized status[6]. (ECF No. 41-1 at 8–9 (citing *Cnty. of Amador*, 872 F.3d at 1015–20).) In opposition, Plaintiffs argue the 2018 gaming ordinance was not at issue in *County of Amador*, and the court did not conclusively decide Laverdure had authority to take land into trust for the Tribe. (ECF No. 44 at 8–11.) Plaintiffs also contend the Tribe lacks Part 83[7] recognition to be eligible for IRA and IGRA

---

[5] Plaintiffs' first four claims present challenges to the following: (1) the Tribe's gaming ordinance (ECF No. 1 ¶ 107); (2) Laverdure's authority to approve the ROD under the Appointment Clause of the U.S. Constitution (*id.* at ¶ 118); (3) the Tribe's federally recognized status under the Indian Reorganization Act ("IRA") (*id.* at ¶ 127); (4) the Tribe's federal recognition under 25 C.F.R. Part 83 (*id.* at ¶ 136).

[6] Plaintiffs' Claims Three and Four both address the Tribe's federally recognized status and thus are combined into one issue.

[7] DOI promulgated what is now commonly referred to as the "Part 83" regulations in 1978. *Cnty. of Amador*, 872 F.3d at 1017; 25 C.F.R. pt. 83. These regulations "establish[] procedures and criteria for [DOI] to use to determine whether a petitioner is an Indian tribe eligible for the special programs and services provided by the United States to Indians because of their status as Indians." 25 C.F.R. § 83.2. This recognition "is a prerequisite to the protection, services, and benefits of the Federal Government available to those that qualify as Indian tribes and possess a government-to-government relationship with the United States." *Id.*

After the promulgation of Part 83 regulations, the Tribe faced some difficulty in achieving federal recognition. *Cnty. of Amador*, 872 F.3d at 1018. However, in 1994, the government considered the Tribe "recognized" and included it on the official list of "Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs." *Id.*

benefits.[8]  (*Id.* at 12–14.)  Plaintiffs argue the Tribe's inclusion on the administrative list of "Indian Entities" eligible to receive service for the Bureau of Indian Affairs does not mean the Tribe is federally recognized.  (*Id.* at 14–15.)

In *County of Amador*, the Ninth Circuit considered two challenges to the same 2012 ROD at issue in the present case, based on whether: (1) the Tribe qualified to have land taken into trust for its benefit under the IRA; and (2) the Tribe may conduct gaming on the parcels pursuant to IGRA.  872 F.3d at 1020.  As a preliminary matter, the court affirmed Laverdure "was empowered to take the Plymouth Parcels into trust" and therefore had the authority to approve the ROD.  *Id.* at 1019 n.5.  Then, the Ninth Circuit held "the Band is a recognized Indian tribe that was 'under Federal jurisdiction' in 1934, and [DOI] did not err in concluding that the Band is eligible to have land taken into trust on its behalf under 25 U.S.C. § 5108."  *Id.* at 1028.  With respect to recognition under 25 C.F.R. Part 83, the court stated, "the Band was effectively recognized without having to go through the Part 83 process" because "a tribe could be 'restored' to Federal recognition outside the Part 83 process."  *Id.* at 1028–31.  Thus, as a federally recognized Tribe, the court held DOI "did not err in allowing the Band to conduct gaming operations on the Plymouth Parcels" in accordance with IGRA.  *Id.* at 1031.

The Ninth Circuit resolved issues identical to those in the present case.  *Id.* at 1015–20.  The "law of the circuit doctrine" mandates that "a published decision of [a Ninth Circuit] court constitutes binding authority which must be followed unless and until overruled by a body competent to do so."  *In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017) (quoting *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2010) (en banc)) (internal quotation marks omitted).  Thus, the Ninth Circuit's decision on the Tribe's federally recognized status and the Tribe's status in 1934 under the IRA are binding on this Court.  Further, the Ninth Circuit clearly found Laverdure's actions within his powers.  *Cnty. of Amador*, 872 F.3d at 1019 n.5.

---

[8]  Benefits of federal recognition under the IRA include "assistance for such purposes as corrections, child welfare, education, and fish and wildlife and environmental programs." *Timbisha Shoshone Tribe v. U.S. Dep't of Interior*, 824 F.3d 807, 809 (9th Cir. 2016)(quoting American Indian Law Deskbook § 2:6).  Further, "[o]nly federally recognized tribes may operate gaming facilities under the IGRA."  *Id.*

1  Accordingly, the Court finds *County of Amador* disposes of Plaintiffs' Claims One through Four
2  on the following issues: (1) the Tribe's gaming ordinance; (2) Laverdure's authority to issue the
3  ROD; and (3) the Tribe's federally recognized status under the IRA and Part 83.
4        Accordingly, the Court GRANTS Defendants' motion for judgment on the pleadings on
5  Claims One through Four.[9]

                      *ii.*    *Whether the Complaint States Claims for Which Relief Can be Granted*

8        Plaintiff's remaining claims are Claim Five, Defendants' violation of Plaintiffs' Equal
9  Protection rights by favoring the Tribe, a race-based group, through approval of the ROD and
10  gaming ordinance (ECF No. 1 at ¶¶ 141–43) and Claim Six, Defendants' violation of federalism
11  protections (*id.* at ¶ 150–51). Defendants argue Plaintiffs' equal protection claim fails because
12  "[p]rovision of benefits to federally recognized tribes on the basis of their status as tribes does not
13  offend equal protection principles." (*Id.*) Further, Defendants argue Plaintiffs' federalism claim,
14  which alleges that the Tribe receives exemptions from state and local law, is inaccurate. (*Id.* at
15  12.) Plaintiffs do not respond to these arguments in any meaningful way. (*See* ECF No. 44.)
16        "Where a party fails to address arguments against a claim raised in a motion . . . , the
17  claims are abandoned and dismissal is appropriate." *Shull v. Ocwen Loan Servicing, LLC*, No.
18  13-CV-2999-BEN (WVG), 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014); *see, e.g.*,
19  *Women's Recovery Ctr., LLC, v. Anthem Blue Cross Life & Health Ins. Co.*, No. 8:20-cv-00102-
20  JWH-ADSx, 2022 WL 757315, at *7 (C.D. Cal. Feb. 2, 2022) ("Courts in this district, as well as
21  many other districts, have found that a failure to address an argument in opposition briefing
22  constitutes a concession of that argument."); *Yarkin v. Starbucks Corp.*, No. C 07-01969 CRB,
23  2008 WL 895688, at *1 (N.D. Cal. Mar. 31, 2008). Thus, Plaintiffs' failure to respond to

---

[9] If a complaint fails to state a plausible claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. U.S.*, 58 F.3d 494, 497 (9th Cir. 1995)). For reasons discussed further below, the Court will not grant leave to amend as the pleadings cannot be cured by the allegation of other facts.

Defendants' arguments is a concession of those arguments.

Even if Plaintiffs had opposed, the Court finds Defendants' arguments persuasive. With respect to Plaintiffs' Equal Protection argument, Claim Five, the Supreme Court has held that any "preference, as applied, is granted to Indians not as a discrete racial group, but, rather, as members of quasi-sovereign tribal entities . . . ." *U.S. v. Antelope*, 430 U.S. 641, 646 (1997) (quoting *Morton*, 417 U.S. at 554). As such, Plaintiffs' argument for Equal Protection fails because the tribe is not a distinct racial group but a separate, "quasi-sovereign entity[]." *Id.* With respect to Plaintiffs' federalism argument, Claim Six, Congress has "plenary power" to "enact legislation that both restricts and, in turn, relaxes those restrictions on tribal sovereign authority." *U.S. v. Lara*, 541 U.S. 193, 200, 202 (2004). Thus, Congress is not exempting the Tribe from state and local law (ECF No. 1 ¶ 150) but using its authority to grant IRA and IGRA benefits to the federally recognized Tribe.

Accordingly, the Court need not consider the arguments and GRANTS Defendants' motion for judgment on the pleadings on Claims Five and Six.

### III.  RULE 24(A)(2) MOTION

#### A.  Standard of Law

Pursuant to Rule 24(a)(2), a party may intervene as a matter of right when:

(1) The application is timely;

(2) The party has a significant protectable interest relating to the property or transaction that is the subject of the action;

(3) The disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and

(4) the existing parties may not adequately represent the applicant's interest.

Fed. R. Civ. P. 24(a)(2); *Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013) (quoting *U.S. v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)).

"Each of these four requirements must be satisfied to support a right to intervene." *Chamness*, 722 F.3d at 1121 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003)). In evaluating whether these requirements are met, courts "are guided primarily by practical and

equitable considerations." *Alisal Water Corp.*, 370 F.3d at 919.  Further, courts generally "construe [the Rule] broadly in favor of proposed intervenors." *United States v. City of L.A., Cal.*, 288 F.3d 391, 397 (9th Cir. 2002) (alteration in original).

B. <u>Analysis</u>

Proposed Defendant Intervenor is the Tribe whose federal recognition and gaming ordinance is at issue.  (ECF No. 1 ¶¶ 1–2.)  Proposed Defendant Intervenor argues, pursuant to Rule 19, this action cannot proceed in its absence.  (ECF No. 62-1 at 1; *see* ECF No. 1 ¶¶ 1–2.)  Proposed Defendant Intervenor seeks limited intervention to dismiss the complaint pursuant to Rule 12(b)(7).  (ECF No. 62-1 at 4.)  Plaintiffs oppose the motion and argue Proposed Defendant Intervenor has no property interest in the case and the motion is untimely.  (ECF No. 64 at 10, 17.)  Defendants take no position on the Proposed Defendant Intervenor's motion for intervention.  (ECF No. 63.)

Additionally, Proposed Defendant Intervenor filed a request for judicial notice.  (ECF No. 66.)  Plaintiffs oppose the request.  (ECF No. 68.)  The Court will first address the request for judicial notice.  Then, the Court will address each of the four Rule 24(a)(2) factors in turn.

*i.    Request for Judicial Notice*

The Court may judicially notice a fact that is not subject to reasonable dispute, either because it is generally known within the court's jurisdiction or because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201.  "The court may take judicial notice at any stage of the proceeding." *Id.*

Proposed Defendant Intervenor requests the Court take judicial notice of Exhibits One and Two.[10]  (ECF No. 66 at 1.)  Plaintiffs oppose the motion and argue the following: (1) the grant deeds were recorded in 2020 and are irrelevant to the case (ECF No. 68 at 5); (2) the land described in the deeds is not the land described in the 2012 ROD (*id.* at 7); (3) the request concerns a disputed fact of whether the DOI approved the land to be taken into trust for the Tribe

---

[10]  Exhibits One and Two contain "copies of the grant deeds transferring said land to the United States in trust for the Tribe, and acceptances of conveyance by the Bureau of Indian Affairs, recorded in Amador County as DOC 2020-0002270-00 and DOC-2020-000271-00." (ECF No. 66 at 1.)

9

(*id.* at 8); and (4) the grant deed and acceptances are not verified for authenticity (*id.* at 9). Pursuant to Federal Rule of Evidence ("Rule") 201(e), Plaintiffs request an evidentiary hearing "on the propriety of taking judicial notice and the nature of the fact to be noticed." (*Id.* at 4.)

The Court will address each of Plaintiffs' arguments in turn, and then address the request for an evidentiary hearing.

### a. Whether the Grant Deeds are Relevant

Plaintiffs argue the grant deeds are irrelevant to the present case because "the grant deeds do not mention, or claim to be issued pursuant to, the 2012 ROD."[11] (ECF No. 68 at 6.) Plaintiffs contend a court may only take judicial notice of matters which have a "direct relation to the matters at issue." (*Id.* (quoting *Robinson Rancheria v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).)

Plaintiff has not presented evidence or cited to authority which states a grant deed must mention or claim to be issued pursuant to a relevant ROD. Both exhibits note the recording was requested by the "Bureau of Indian Affairs, U.S. Dept. of the Interior" and should be mailed to the Bureau's office when the parcels are recorded. (ECF No. 66-1 at 1; ECF No. 66-2 at 1.) Further, the description of the grant deed declares to give the land "to the United States of America in Trust for the Ione Band of Miwok Indians of California." (ECF No. 66-1 at 1; ECF No. 66-2 at 1.) The language of the grant deeds is sufficient to determine the grant deeds are relevant as both pertain to the taking of land in trust for the Tribe. Accordingly, the Court finds Plaintiffs' arguments unpersuasive, and further finds the grant deeds relevant to the instant action.

### b. Whether the Land Described Pertains to the ROD

Plaintiffs argue the grant deeds do not cover the same land parcels described in the 2012 ROD. (ECF No. 68 at 7.) Plaintiffs contend the grant deeds only transferred trust title for ten out

---

[11] Plaintiffs also argue the grant deeds were recorded in 2020, two years after the ROD expired and was withdrawn. (ECF No. 68 at 5.) Plaintiffs cite to 28 U.S.C. § 2401(a) to support this assertion. (*Id.*) However, that section only states that "civil actions commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). As discussed further below in footnote 13, Plaintiffs have not provided any authority to support the assertion that the ROD is expired and the Solicitor withdrew the ROD. As such, the Court will not address this argument further.

of the twelve parcels specified in the ROD.  (*Id.*)  Proposed Defendant Intervenor requested the Court judicially notice the grant deeds as "the land that the [DOI] approved to take into trust for the benefit of the Tribe in 2012 . . . was conveyed to the United States in trust for the Tribe." (ECF No. 66 at 1.)  Proposed Defendant Intervenor does not claim DOI approved all the parcels, and the quoted language does not suggest that.  The DOI approved ten parcels to take into trust for the Tribe pertaining to the 2012 ROD.  Accordingly, the Court finds the land described pertains to the ROD, even if not all twelve parcels were taken into trust.

c. <u>Whether the Request Concerns a Disputed Fact</u>

Plaintiffs argue the Court cannot take judicial notice of this matter because it is a disputed fact whether, in 2012, the DOI approved the transfer of land to the Tribe.  (ECF No. 68 at 8.)

"A court may take judicial notice of the undisputed matters of public record, e.g., the fact that a hearing took place, but it may not take judicial notice of disputed facts stated in public records."  *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1057 (quoting *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001)).

The Ninth Circuit ruled on this issue, finding that the DOI "did not err in concluding that the Band is eligible to have land taken into trust on its behalf."  *Cnty. of Amador*, 872 F.3d at 1028.  A fact is indisputable and subject to judicial notice if it is "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned under Rule 201(b)(2)."  *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983 (S.D. Cal. 2005) (quoting *U.S. v. Ritchie*, 342 F.3d 903, 909 (9th. Cir. 2003)).  Thus, despite Plaintiffs contention to the contrary, it is not a reasonably disputed fact whether the DOI approved the transfer of land as the Ninth Circuit and the grant deeds filed with the Amador County Recorder are sources whose accuracy cannot be reasonably questioned.  Accordingly, the Court holds the request for judicial notice does not concern a disputed fact.

d. <u>Whether the Deeds and Acceptances are Authentic</u>

Plaintiffs argue the accuracy of the grant deeds and "acceptances" are questionable.  (ECF No. 68 at 9.)  Plaintiff contends the documents are not authenticated or certified by the custodian of records for the Amador County Recorder's Office.  (*Id.*)  Further, Plaintiffs argue the

signatures present on the documents may not be credible. (*Id.*)

"Under Rule 201, a court may take judicial notice of matters of public record." *Sears, Roebuck & Co. v. Metro. Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956). Courts often take judicial notice of grant deeds and similar documents of public record. *See Sunbelt Rentals v. Hawks Truck Stop*, 2010 WL 1729165, at *1 (E.D. Cal. Apr. 27, 2010) (granting judicial notice of deed of trust and assignment of property); *Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1146 (E.D. Cal. 2010) (taking judicial notice of a deed of trust and assignment of deed of trust because both are publicly recorded documents).

The grant deeds and acceptances are both matters of public record. To the extent Plaintiffs are concerned about the credibility of the documents, the grant deeds were both signed under certification of a notary public. (ECF No. 66-1 at 1; ECF No. 66-2 at 1.) Furthermore, the Amador County Recorder's Official Records Index website displays both grant deeds. Amador County Clerk/Recorder's Official Records Index (search under "Documents Number" tab), https://mint.amadorgov.org/RecorderWorksInternet/. Accordingly, the Court finds the Amador County Clerk and Recorder's Official Records Index and notary verification provide sufficient proof that both deeds are accurate matters of public record.

        e.  Request for Evidentiary Hearing

Plaintiffs' opportunity to be heard has been satisfied as Plaintiffs reply brief addressed all concerns relating to Proposed Defendant Intervenor's request for judicial notice. *See Papai v. Harbor Tug and Bargo Co.*, 67 F.3d 203, 207 n.5 (9th Cir. 1995) (holding plaintiff's reply brief, which addressed his concerns with the request for judicial notice, was a sufficient opportunity to be heard). Accordingly, the Court finds Plaintiffs have had an adequate opportunity to be heard, and as such, Proposed Defendant Intervenor's request for judicial notice is GRANTED.

       ii.  *Rule 24(a)(2) Factors*

        a.  Timeliness of Application

In determining whether a motion is timely, the Court considers: (1) the stage of the proceeding; (2) any prejudice to the other parties; and (3) the reason for and length of any delay. *Orange Cnty. v. Air Cal.*, 799 F.2d 535, 537 (9th Cir. 1986). A motion is generally considered

timely when "made at an early stage of the proceedings, the parties would not have suffered prejudice from the grant of intervention at that early stage, and intervention would not cause disruption or delay in the proceedings." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

Plaintiffs filed the Complaint on May 22, 2018. (ECF No. 1.) Proposed Defendant Intervenors filed the present motion to intervene on December 9, 2021. (ECF No. 62.) Defendants filed the currently pending motion for judgment on the pleadings on June 25, 2020. (ECF No. 41.) Proposed Defendant Intervenor contends the motion is timely because of the nascent stage of the proceeding, as evinced by the lack of a set hearing date. (ECF No. 62-1 at 6.) Proposed Defendant Intervenor waited to file this motion due to a pending action before the Supreme Court. (*Id.*) In that matter, the Supreme Court declined to overturn a dismissal of a similar action for failure to join the absent tribe on December 6, 2021. (*Id.* (citing *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 83 (2021), *reh'g denied*, No. 20-1559, 2021 WL 5763396 (U.S. Dec. 6, 2021)).)

In opposition, Plaintiffs argue the motion is untimely because the lawsuit was filed almost four years ago, and the Court's Initial Pretrial Scheduling Order requires any requests to add parties to be brought within 60 days of service. (ECF No. 64 at 17.) Plaintiffs contend disrupting the Court's pending consideration of the motion for judgment on the pleadings at the final stage would be prejudicial. (*Id.* at 19.) In reply, Proposed Defendant Intervenor argues the limited purpose of moving to dismiss pursuant to 12(b)(7) cannot prejudice the parties in this case. (ECF No.67 at 3.) Proposed Defendant Intervenor also contends the Court could consider this motion prior to or simultaneously with the pending motion for judgment on the pleadings. (*Id.*)

*1. Stage in the Proceeding*

The length of time since a suit was filed does not alone determine timeliness. *United States v. State of Oregon* (*Oregon I*), 913 F.2d 576, 588 (9th Cir. 1990). "Where a change of circumstances occurs, and that change is the 'major reason' for the motion to intervene, the stage of proceedings factor should be analyzed by reference to the change in circumstances, and not the commencement of the litigation." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir.

2016) (quoting *Oregon I*, 913 F.2d at 588). "[A] change of circumstance, which suggests that litigation is entering a new stage, indicates that the stage of the proceeding and reason for delay are factors which militate in favor of granting the application [to intervene]." *United States v. State of Oregon* (*Oregon II*), 745 F.2d 550, 552 (9th Cir. 1984) (motion to intervene due to a change in circumstances was timely even when sought fourteen years after the action was initiated).

The parties have engaged in substantial litigation, including a motion to dismiss and motion for judgment on the pleadings, over the course of four years. (*See* ECF Nos. 15, 41.) However, Proposed Defendant Intervenor argues the Supreme Court's denial to rehear *Jamul* constitutes a major change in circumstances and justifies the motion to intervene at this time. (ECF No. 62-1 at 6–7.) As such, the Court will analyze this factor by reference to the change in circumstances. *Smith*, 830 F.3d at 854. This issue is discussed further below in tandem with the third factor.

*2. Prejudice to Other Parties*

Prejudice is only relevant to the extent that it "flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented." *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 825 (9th Cir. 2021) (quoting *Smith*, 830 F.3d at 857). "Prejudice must be connected in some way to the timing of the intervention motion" and simply because adding another party may "make resolution more difficult does not constitute prejudice." 22 F.4th at 825 (quoting *Oregon II*, 745 F.2d at 552–53 (alteration in original) (internal quotation marks omitted).

Proposed Defendant Intervenor is seeking intervention only to request dismissal under Rule 12(b)(7) and contends this limited action will not prejudice other parties. (ECF No. 62-1 at 1.) Proposed Defendant Intervenor is not seeking to litigate new issues or otherwise delay the litigation. *Cf. United States v. Wash.*, 86 F.3d 1499, 1504 (9th Cir. 1996) (proposed defendant intervenor's motion was prejudicial to other parties as it would "complicate the issues and prolong the litigation"). Further, Proposed Defendant Intervenor is not causing undue prejudice as it intervened as soon as it knew its interests would not be adequately represented per the

1  decision in *Jamul* discussed further below. *See Smith*, 830 F.3d at 859 ("When our inquiry is
2  properly narrowed to the prejudice attributable to Appellants' delay in moving to intervene after
3  the time Appellants knew, or reasonably should have known, that their interests were not being
4  adequately represented by existing parties, the prejudice to existing parties becomes nominal at
5  best."). Accordingly, the Court holds this factor supports finding the motion is timely.

              *3.   Reason for and Length of Delay*

7  "Delay is measured from the date the proposed intervenor should have been aware that its
8  interests would no longer be protected adequately by the parties, not the date it learned of the
9  litigation." *Kalbers*, 22 F.4th at 823 (quoting *United States v. Wash.*, 86 F.3d 1499, 1503 (9th
10 Cir. 1996)) (internal quotation marks omitted).

11     Proposed Defendant Intervenor delayed its motion in anticipation of the Supreme Court
12 rehearing *Jamul*. (ECF No. 62-1 at 6.) Proposed Defendant Intervenor contends it realized its
13 interests would not be adequately represented when the Supreme Court denied the rehearing of
14 *Jamul* on December 6, 2021. (ECF No. 62-1 at 6–7.) This motion was filed only three days after,
15 on December 9, 2021. The Court accepts this reasonable explanation for delay, as *Jamul* is
16 applicable to the present case. *See Officers for Just. v. Civ. Serv. Comm'n of S.F.*, 934 F.2d
17 1092, 1095 (9th Cir. 1991) (finding a motion to intervene timely when the party who formerly
18 represented the intervenor's interests changed its position). Accordingly, the Court finds the
19 motion to intervene was timely filed and will not prejudice the existing parties or cause delay
20 within the meaning of Rule 24.

              b.     Significant Protectable Interest

22     Proposed Defendant Intervenor argues it has strong protectable interests in the outcome of
23 this litigation. (ECF No. 62-1 at 7.) Proposed Defendant Intervenor points to the recent Ninth
24 Circuit case, *Jamul*, in which the plaintiff challenged the tribe's federal recognition and gaming
25 ordinance. (*Id.* at 7–8.) The Ninth Circuit held the plaintiff's challenges "would have far-
26 reaching retroactive effects on the [tribe's] existing sovereign and proprietary interests." (*Id.* at 8
27 (quoting *Jamul*, 974 F.3d at 984).) Thus, the action could only proceed with the tribe as a party.
28 *Jamul*, 974 F.3d at 984. Plaintiffs do not make an argument against this factor in their

                                                 15

opposition.[12] (*See* ECF No. 64.)

"A proposed intervenor 'has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims." *Kalbers*, 22 F.4th at 827 (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)) (internal quotation marks and citation omitted).

As in *Jamul*, the invalidation of Proposed Defendant Intervenor's gaming ordinance or its status as a recognized tribe will affect its land and rights. As such, it has an interest in the outcome of the litigation. *See Dine Citizens v. Bureau of Indian Affs.*, 932 F.3d 843, 853 (9th Cir. 2019) (holding a challenge to the coal mining activities conducted by a tribal-owned corporation warranted intervention because it had a legally protectable interest which could be impacted by the litigation). Accordingly, the Court finds Proposed Defendant Intervenor has satisfied the requisite showing of a protectable interest.

    c. <u>Disposition of Action May Impair or Impede Ability to Protect Interest</u>

"If an absentee would be substantially affected in a practical sense by the determination made in an action, [the absentee] should, as a general rule, be entitled to intervene." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (quoting Rule 24 advisory committee's notes). Here, the pending litigation could directly impair or impede Proposed Defendant Intervenor. If the Court found Proposed Defendant Intervenor was not a federally recognized tribe, the government would not be able to hold its land in trust and the gaming ordinance would be invalid. (ECF No. 62-1 at 8 (quoting *Jamul*, 974 F.3d at 997).) Accordingly,

---

[12] Although Plaintiffs do not make a direct argument against this factor, Plaintiffs argue Proposed Defendant Intervenor does not have Article III standing to intervene. (ECF No. 64 at 10.) Plaintiffs argue this case does not involve any property claimed by Proposed Defendant Intervenor because the 2012 ROD expired on May 30, 2018, and none of the parcels were taken into trust. (ECF No. 64 at 10.) Plaintiffs admit "in the Ninth Circuit the requirement of Article III standing is incorporated into the four-part intervention test as part of the requirement that the applicant for intervention must 'assert an interest relating to the property or transaction which is the subject of the action.'" (*Id.* at 3 (quoting *Portland Audubon So. v. Hodel*, 866 F.2d 302, 308 n.1 (9th Cir. 1989).) Plaintiffs' assertion that the 2012 ROD expired is unfounded and unsupported by their complaint or other filings before the Court. (*See* ECF Nos. 1, 44.) Therefore, the Court need not address this argument.

16

this factor is satisfied.

                              d.        <u>No Existing Adequate Representation</u>

Proposed Defendant Intervenor argues "the United States cannot adequately represent a tribe where the relief sought would create a conflict between the United States and the [T]ribe." (ECF No. 62-1 at 8.) Further, "[i]f the Court were to agree [with Plaintiffs], the federal defendants' interest in complying with federal law would force them to take a position that is in direct conflict with [Proposed Defendant Intervenor's] fundamental interest to uphold its status as a federally recognized Indian tribe with gaming-eligible trust land." (*Id.* at 9.)

In opposition, Plaintiffs argue Defendants and Proposed Defendant Intervenor have identical interests in the litigation, thus Defendants can adequately represent such interests. (ECF No. 64 at 19.) Plaintiffs contend Proposed Defendant Intervenor is admitting that "if [Plaintiffs] prevail[], and the Federal Defendants were required to comply with federal laws, that would diverge from [Proposed Defendant Intervenor's] interest in continuing to violate federal law." (*Id.* at 20.)

A proposed intervenor is adequately represented when "(1) the interests of the existing parties are such that they would undoubtedly make all of the non-party's arguments; (2) the existing parties are capable of and willing to make such arguments; and (3) the non-party would offer no necessary element to the proceeding that existing parties would neglect." *Sw. Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1153–54 (9th Cir. 1998).

The Court finds Proposed Defendant Intervenor's arguments to be persuasive. "Federal defendants would not adequately represent an absent tribe where their obligations to follow relevant [] laws were in tension with tribal interests . . . ." *Jamul*, 974 F.3d at 997 (citing *Dine Citizens*, 932 F.3d at 855). Further, the burden of showing inadequate representation is "minimal" and Proposed Defendant Intervenor need only demonstrate "that representation of its interests 'may be' inadequate." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki*, 324 F.3d at 1086). Accordingly, the Court finds this factor has been met, and as such, the Court finds intervention appropriate.

///

### IV. CONCLUSION

For the reasons set forth above, the Defendants' Motion for Judgment on the Pleadings (ECF No. 41) is GRANTED and Plaintiffs' claims are DISMISSED without leave to amend. Proposed Defendant Intervenor's Motion to Intervene (ECF No. 62) and Request for Judicial Notice (ECF No. 66) are GRANTED.  The Clerk of the Court is ordered to close this case.

IT IS SO ORDERED.

**DATED**:  May 10, 2022

Troy L. Nunley
United States District Judge